## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| **ALVIN MAURICE HAILEY** | **: CIVIL ACTION** |
| | : |
| **v.** | **: NO. 19-2171** |
| | : |
| **C.O. FRED BEARD, *et al.*** | : |

## MEMORANDUM

**KEARNEY, J.**                                                                    **October 29, 2019**

While we expect male prison correctional officers may search male citizens in custody including pat downs of genitalia and strip searches as warranted, they may not sexually assault those in custody under the guise of their authority to protect the other inmates and officers. We today evaluate *pro se* specific allegations of a correctional officer's repeated sexual assaults upon a man awaiting trial at a correctional facility under the Fourteenth Amendment. The pretrial detainee claims he told other officers to help him but they did nothing to protect him and instead impeded his grievance process. He also wrote to the prison's warden who allegedly failed to respond to his concerns. He finally wrote to the County District Attorney and Pennsylvania Attorney General resulting in an investigation but then allegedly more threats to be quiet to get a better deal on his pending charges. The warden and correctional officers now move to dismiss the substantive claims and for summary judgment arguing the pretrial detainee did not exhaust the prison's grievance procedures. At this preliminary stage based solely on our liberal reading of the *pro se* amended complaint, we deny summary judgment and the motion to dismiss as to the Fourteenth Amendment claims against the alleged assaulting officer and warden who failed to intervene upon notice. We dismiss the claims without prejudice against the other officers as the pretrial detainee did not plead their knowledge of ongoing conduct.

**I.    *Pro se* alleged facts[1]**

In August 2017, the Commonwealth detained Alvin Maurice Hailey in the Montgomery County Correctional Facility awaiting his trial.[2]  On an unplead date,  Correctional Officer Beard escorted Mr. Hailey to his housing unit on "Medium Max."[3] Correctional Officer Beard directed Mr. Hailey face the wall to conduct a random pat down when they reached Mr. Hailey's cell, and Mr. Hailey complied.[4] Correctional Officer Beard ran his fingers from Mr. Hailey's ankles up to his thighs, where he began "massaging [Mr. Hailey's] groin and penis."[5] Mr. Hailey felt uncomfortable and asked Correctional Officer Beard: "Can you please stop, Im [sic] feeling uncomfortable and this search is unwarranted."[6] Instead of stopping, Correctional Officer Beard replied: "Shut up bitch this is my house you do what I say when I say it. Your [sic] my bitch."[7] Mr. Hailey immediately notified Captain Moyer of what happened following this incident, who responded: "Grow a pair and man up."[8]

The Facility rehoused Mr. Hailey due to a bail reduction hearing within months of this incident, but Mr. Hailey continued to encounter Correctional Officer Beard "in visiting room and in normal passing through the facility as a whole on a daily basis.[9] When Mr. Hailey saw Correctional Officer Beard, Correctional Officer Beard blew kisses at him, stuck his tongue through his index and middle finger in a sexual manner toward him, and made vulgar comments to him.[10]

One unidentified day following Mr. Hailey's visit with "his father and/or mother," the Montgomery County Correctional Facility assigned Correctional Officer Beard as Mr. Hailey's strip search officer, which made Mr. Hailey "uneasy" due to his past encounters with Correctional Officer Beard.[11] Correctional Officer Beard asked Mr. Hailey "to get fully naked," and Mr. Hailey complied.[12] Correctional Officer Beard then ordered Mr. Hailey "to squat and cough," and Mr.

2

Hailey complied "over and over" until he finally refused.[13] When Mr. Hailey refused, Correctional Officer Beard "gave a direct order to comply or [Mr. Hailey] would be sent to the hole and lose his visits in the future indefinitely."[14] Following the threat, Mr. Hailey complied with Correctional Officer Beard's orders and Correctional Officer Beard "physically grabbed [Mr. Hailey's] buttcheeks [sic] and spread them apart, . . . then got on his knees and asked [Mr. Hailey] to let him 'taste him.'"[15]

Mr. Hailey told Captain Smith, Major Carbo, Major Brown, and Lieutenant Zerr about the "unbearable encounters" involving Correctional Officer Beard, who each threatened him to "stop reporting it or be put in segragation [sic]."[16] He asked Captain Smith, Major Carbo, Major Brown, and Lieutenant Zerr for grievance forms, but they denied his requests and "swept [them] under the rug."[17]

"On or around 2018," Mr. Hailey encountered Correctional Officer Beard on Housing Unit G-1 where Correctional Officer Beard continued verbally harassing Mr. Hailey, telling "inmates [Mr. Hailey] is a 'snitch.'"[18] Correctional Officer Beard told Mr. Hailey no one would believe him regarding Correctional Officer Beard's sexual harassment and abuse because he is a "low life scum" who "ha[s] no rights."[19] Mr. Hailey's cellmate, Taren-Ebo Wilson, witnessed Correctional Officer Beard's inappropriate behavior and the sexual abuse on multiple occasions.[20]

Mr. Hailey wrote to Warden Julio Algarin "repeatedly on more than one occasion" using request slips to try to escape Correctional Officer Beard's abuse, but Warden Algarin never responded.[21] Specifically, Mr. Hailey wrote a letter to Warden Algarin on August 30, 2017 regarding Correctional Officer Beard sexually abusing him. Warden Algarin did not answer.[22] Warden Algarin "turned a 'blind eye'" to the request slips and alleged abuse, as Correctional

3

Officer Beard continued to sexually harass and abuse Mr. Hailey—the harassment and abuse worsening with each incident.[23]

The District Attorney's Investigator, John Doe, visited Mr. Hailey following Mr. Hailey sending the Montgomery County District Attorney's Office "repeated correspondences," Mr. Hailey again trying to obtain help to escape Correctional Officer Beard's sexual harassment and abuse.[24] District Attorney Investigator John Doe threatened Mr. Hailey "to stop making reports or their [sic] would be no deal on [his] case."[25] Security Captain Berger witnessed Investigator John Doe's threats and laughed.[26]

Captain Moyer handled Mr. Hailey's filed Prison Rape Elimination Act complaints, and "[e]verytime [sic] [Mr. Hailey] filed a report with [PREA] Captain Moyer would dismiss it and not investigate the issue."[27] The Facility also chose Mr. Hailey's cell for random searches and destroyed his property during those searches on multiple occasions.[28] When Mr. Hailey asked Majors Carbo and Brown "why this [was] happening," Major Carbo replied: "[Y]ou don't know when to keep your mouth shut."[29]

Mr. Hailey notified Major Carbo and Captain Smith of Correctional Officer Beard sexually abusing him, but they allegedly failed to protect him or move him to protective custody per his requests on multiple occasions.[30] He notified Major Brown and Lieutenant Zerr of Correctional Officer Beard sexually abusing him, who also failed to protect him from Correctional Officer Beard's sexual abuse.[31]

Mr. Hailey used the Facility's grievance procedure "to try and solve the problem," but the grievance he turned into Correctional Officer Errington "somehow disappeared."[32] Mr. Hailey placed his initial grievance in Correctional Officer Errington's care and custody, but the "grievance was misplaced or lost by one of the formentioned [sic] bad actor's [sic] in Montgomery County

4

Correctional Facility."[33] Because he never received a response to the initial grievance, he asked to submit grievances multiple times, which Captain Moyer consistently denied.[34] Mr. Hailey also tried writing to the Montgomery County District Attorney's Office—specifically Montgomery County District Attorney Kevin Steele—"to try and solve the problem" on April 25, 2018 and April 13, 2019, but never received a response to either letter.[35]

He wrote to Pennsylvania Attorney General Josh Shapiro, forwarding a copy of the April 13, 2019 letter he sent to District Attorney Steele, and received a response from the Pennsylvania Attorney General's Office dated May 8, 2019.[36] Stephen St. Vincent, the Director of Policy and Planning for the Pennsylvania Attorney General's Office, informed Mr. Hailey he received his letter regarding being a victim of sexual harassment and assault and he forwarded a copy of his April 13, 2019 letter back to the Montgomery County District Attorney's Office, as well as to the Montgomery County Commissioners Office as they are "the agencies that are best equipped to handle this issue . . . ."[37]

Mr. Hailey *pro se* sues: (1) Correctional Officer Beard; (2) Warden Julio Algarin; (3) Security Captain Berger; (4) District Attorney Investigator John Doe; (5) Captain Moyer; (6) Major Carbo; (7) Major Brown; (8) Captain Smith; (9) Lieutenant Zerr; and, (10) Correctional Officer Warren Errington in both their individual and official capacities as Montgomery County Correctional Facility employees for his sexual abuse occurring in the Montgomery County Correctional Facility.[38]

Mr. Hailey sues Correctional Officer Beard for violating the Eighth Amendment of the United States Constitution by sexually abusing Mr. Hailey.[39] He alleges Correctional Officer Beard's actions caused him to suffer "grave emotional distress at the time of the incident" and "continues to haunt [him] to this day," requiring Mr. Hailey to receive professional guidance from

5

the SCI-Somerset Department of Psychiatry and Psychology.[40] Mr. Hailey alleges Warden Algarin "is responsible for the conduct of [his] staff and to insure [sic] once a sexual abuse claim is reported to remove [the] victim or [his] staff to insure [sic] the abuse does not continue," and Warden Algarin "failed his duties" by not following this procedure.[41] He alleges collusion by Investigator John Doe, Captain Moyer, Major Carbo, Major Brown, Captain Smith, Lieutenant Zerr, and Correctional Officer Errington "to cover up [Correctional Officer Beard's] sexual abuse and misconduct."[42]

## II. Analysis

Correctional Officer Beard, Captain Moyer, Major Carbo, Major Brown, Warden Algarin, Captain Smith, Lieutenant Zerr, Captain Berger, and Correctional Officer Errington move to dismiss for failure to state a claim[43]; or, in the alternative, for summary judgment arguing Mr. Hailey failed to exhaust his administrative remedies under the Prison Litigation Reform Act of 1995.[44]

"To state a claim under [section] 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[45] "Section 1983 is not a source of substantive rights, but merely a means of vindicating violations of federal constitutional and statutory rights committed by state actors."[46] To obtain redress under section 1983, a plaintiff must "establish[] an underlying violation of a federal constitutional or statutory right."[47]

### A. Mr. Hailey alleges facts precluding judgment based on exhaustion as an affirmative defense.

Correctional Officer Beard, Captain Moyer, Major Carbo, Major Brown, Warden Algarin, Captain Smith, Lieutenant Zerr, Captain Berger, and Correctional Officer Errington argue Mr. Hailey failed to exhaust his available administrative remedies under the Prison Litigation Reform

6

Act, requiring us to grant summary judgment in their favor. We disagree, as Mr. Hailey *pro se* alleges facts precluding exhaustion as an affirmative defense.

Under the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[48] "As a general rule, inmates who fail to complete the prison grievance process are barred from subsequently litigating claims in federal court."[49] "A court must examine whether a prisoner has properly exhausted his claim 'by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances, and the waiver, if any, of such regulations by prison officials.'"[50] "Defendants must plead and prove the failure of a prisoner to exhaust administrative remedies as an affirmative defense."[51]

But courts acknowledge "the exhaustion requirement may be affected by prison officials' refusal to provide a prisoner with the necessary grievance forms."[52] The Prison Litigation Reform Act "only requires that prisoners exhaust such administrative remedies 'as are available.'"[53] In *Ross v. Blake*, the Supreme Court held "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."[54] Where the procedure is not "capable of use," and "the facts on the ground demonstrate that no such potential exists, the inmate has no obligation to exhaust the remedy."[55]

Mr. Hailey pleads facts demonstrating the "unavailability" to him of the administrative remedies at the Montgomery County Correctional Facility, excepting his need to exhaust such remedies. He alleges Major Carbo, Major Brown, Captain Smith, and Lieutenant Zerr denied his many requests to grieve Correctional Officer Beard's harassment and "threat[ened] [him] to stop

7

reporting it or be put in segragation [sic]."[56] He alleges Investigator John Doe also "threatened [him] to stop making reports or their [sic] would be no deal on [his] case."[57] Mr. Hailey "multiple times requested a grievance from [Captain] Moyer on many occasions to which [h]is request was denied."[58] Because the prison officials denied him grievances, he wrote a letter to Warden Algarin regarding Correctional Officer Beard's harassment, but the Warden never responded.[59] Mr. Hailey resorted to sending multiple letters to the Montgomery County District Attorney's Office and the Pennsylvania Attorney General's Office explaining the sexual harassment and abuse after his unsuccessful efforts within the prison.[60]

As alleged, Mr. Hailey could not exhaust the Montgomery County Correctional Facility's grievance procedure because the prison officials at issue prevented his access to the procedure. Although writing a letter to outside agencies does not exhaust remedies under the Prison Litigation Reform Act,[61] Mr. Hailey alleges facts demonstrating the grievance procedure's unavailability, excluding his obligation to exhaust the remedy and precluding the prison officials from claiming exhaustion as an affirmative defense at this stage.

## B.    Mr. Hailey may state a claim under the Fourteenth Amendment.

Mr. Hailey sues under the Eighth Amendment for sexual abuse. Correctional Officer Beard, Captain Moyer, Major Carbo, Major Brown, Warden Algarin, Captain Smith, Lieutenant Zerr, Captain Berger, and Correctional Officer Errington argue the Eighth Amendment of the United States Constitution is inapplicable because Mr. Hailey is a pretrial detainee, and Mr. Hailey must bring his civil claims against them under the Fourteenth Amendment. We agree.

"In a [section] 1983 action with a *pro* se plaintiff, the [c]ourt must "apply the applicable law, irrespective of whether a *pro se* litigant [] mention[s] it by name."[62] When defendants allegedly violate a pretrial detainee's civil rights, the Fourteenth Amendment—rather than the

8

Eighth Amendment—governs the pretrial detainee plaintiff's civil rights claim because he is not yet a convicted prisoner.[63] "[Pretrial detainees] are not yet at a stage of the criminal process where they can be punished [as defined by the Eighth Amendment] because they have not yet been convicted of anything."[64] But "[t]he Fourteenth Amendment affords pretrial detainees at least as much protection as the Eighth Amendment provides convicted prisoners."[65] Where pretrial detainees bring nonmedical conditions of confinement claims, our Court of Appeals broadly holds the pretrial detainees "are entitled to greater constitutional protection than that provided by the Eighth Amendment."[66]

Although Mr. Hailey asserts his current civil rights claims against Correctional Officer Beard, Captain Moyer, Major Carbo, Major Brown, Warden Algarin, Captain Smith, Lieutenant Zerr, Captain Berger, and Correctional Officer Errington under the Eighth Amendment, we must acknowledge Mr. Hailey's *pro se* status and analyze his claims under the applicable law. As Mr. Hailey brings these claims regarding civil rights violations against him while a pretrial detainee, we must analyze his claims under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment's cruel and unusual punishment standard.

## C.     Mr. Hailey alleges facts supporting a claim against Correctional Officer Beard for sexual abuse.

Correctional Officer Beard argues Mr. Hailey fails to allege a plausible civil rights claim against him, as Mr. Hailey does not allege the pat down search violated standards of decency and he scantily plead his sexual abuse claim against Correctional Officer Beard. We disagree.

"[U]nder the Due Process Clause [of the Fourteenth Amendment], a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."[67] "[C]onditions . . . reasonably related to a penal institution's interest in maintaining jail security typically pass constitutional muster,"[68] and a "particular measure amounts to punishment

9

when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose." [69] "Whether a pretrial detainee has been punished generally turns on whether the conditions have a purpose other than punishment, and whether the totality of the conditions are 'excessive' such that they resulted in 'genuine privations of hardship over an extended period of time.'"[70]

Sexual assault constitutes impermissible punishment, as it cannot and does not serve a legitimate governmental objective. [71] In *E.D. v. Sharkey*, our Court of Appeals concluded an immigration detainee—with "immigration detainees [being] entitled to the same due process protections" as pretrial detainees[72]—had a clearly established right "not to be sexually assaulted by a state employee while in confinement," and the detainee's sexual assault allegations against the employee "set forth a plausible violation of her right to personal bodily integrity protected by the Due Process Clause of the Fourteenth Amendment."[73] The detainee's allegations of the state employee's sexual assault "could not have served a legitimate governmental objective and thereby constituted impermissible punishment."[74]

Mr. Hailey alleges Correctional Officer Beard "massag[ed] [his] groin and penis" and did not stop doing so even after Mr. Hailey told Correctional Officer Beard he felt "uncomfortable and th[e] search is unwarranted."[75] When asked to stop, Correctional Officer Beard told Mr. Hailey, "Shut up bitch this is my house you do what I say when I say it. Your [sic] my bitch."[76] Mr. Hailey alleges Correctional Officer Beard threatened "he would be sent to the hole and lose his visits in the future indefinitely" when he did not comply to repetitive, uncomfortable orders after performing them multiple times.[77] Correctional Officer Beard allegedly "physically grabbed [Mr. Hailey's] buttcheeks and spread them apart . . . [and] got on his knees and asked [Mr. Hailey] to

10

let him 'taste him.'"[78] He also allegedly blew kisses and made vulgar comments to Mr. Hailey and "st[u]ck his tounge [sic] through his index and middle finger in a sexual manner."[79] Comparable to *E.D. v. Sharkey*, Mr. Hailey pleads "a plausible violation of [his] right to personal bodily integrity protected by the Due Process Clause of the Fourteenth Amendment."[80]

Though "[v]erbal abuse of a prisoner, even of the lewd variety . . . , is not actionable under [section] 1983,"[81] Mr. Hailey alleges Correctional Officer Beard's actions did not stop at threats and lewd gestures. Rather the threats and lewd gestures accompanied alleged unwanted and violative physical touching of Mr. Hailey's genitals and intruded on his personal integrity. Correctional Officer Beard's alleged sexual harassment cannot be rationally related to a legitimate non-punitive government purpose—even if Mr. Hailey's strip searches served a legitimate governmental purpose and were justified at their inception—as they may exceed the bounds of a permissible pretrial detainee strip search.[82] As Mr. Hailey has a right to be free from sexual assault by prison employees while a pretrial detainee and pleads sexual harassment and abuse by Correctional Officer Beard, we find Mr. Hailey pleads civil rights claims against Correctional Officer Beard.

## D. Mr. Hailey fails to plead *Monell* civil rights claims against the named prison officials.

Correctional Officer Beard, Captain Moyer, Major Carbo, Major Brown, Warden Algarin, Captain Smith, Lieutenant Zerr, Captain Berger, and Correctional Officer Errington move to dismiss Mr. Hailey's section 1983 claims against them regarding supervisory liability arguing he fails to plead a Montgomery County Correctional Facility policy or custom as the moving force behind the constitutional violations under *Monell v. New York City Department of Social Services*. We agree.

11

The Supreme Court in *Monell* concluded a "municipality may be held liable under 42 U.S.C. § 1983 for a constitutional injury [] directly result[ing] from a municipality's policy, custom, or practice." [83] "To establish municipal liability under 42 U.S.C. § 1983, a plaintiff must demonstrate [] the municipality itself, throughout the implementation of a policy or a custom, caused the underlying constitutional violation."[84] "A municipality is not liable under [s]ection 1983 unless the policy or custom was the 'moving force' underlying the constitutional violation."[85] *Monell* requires a plaintiff "plead[] the existence of: 1) a policy or lack thereof; 2) a policy maker that effectuated said policy; and 3) a constitutional violation whose 'moving force' was the policy in question."[86] "Under *Monell*, a municipality cannot be subjected to liability solely because injuries were inflicted by its agents or employees."[87] "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."[88]

Where allegations in the early stage of proceedings are general but show "defendants were aware of the unconstitutional conduct and that the offending conduct may have been policy and practice at [the correctional facility]," we should "allow the [c]omplaint to proceed against the[] defendants . . . [when] it is not based solely on a theory of *respondeat superior*."[89] In *Daniels v. Morris County Correctional Facility*, Judge Cavanaugh held Mr. Daniels, a state pretrial detainee proceeding *pro se*, could assert civil rights claims against supervisory officials where he alleged the "defendants operated, facilitated, maintained and/or allowed the [correctional facility] staff to engage in unconstitutional behavior against [him]," even though he presented very general allegations, as his civil rights claims against the defendants were "not based solely on a theory of *respondeat superior*."[90] Mr. Daniels alleged supervisory liability claims sufficient for Judge

12

Cavanaugh to deny the prison official defendants' motion to dismiss at the early stage of the proceedings.[91] In *Wright v. City of Philadelphia*, Judge Pratter held Mr. Wright "allege[d] no fewer than eight specific customs, practices, or policies maintained or indulged by the City at the time of his arrest and prosecution that led to his constitutional injury . . . ."[92] Judge Pratter emphasized Mr. Wright specifically described how the same officers named in his case engaged in the type of misconduct he alleged occurred to him, "allowing the Court to infer that the unconstitutional practices of the Philadelphia Police Department caused Mr. Wright's injuries and were sufficiently widespread as to be ascribed to municipal policymakers."[93]

Mr. Hailey does not plead a Montgomery County Correctional Facility policy or custom, or a "link between the challenged restriction and a municipal decisionmaker."[94] Mr. Hailey does not allege the sexual harassment and abuse nor the prison officials' failure to protect him from such abuse occurred due to a policy or custom of the local government operating the Montgomery County Correctional Facility—nor does he identify a policy or custom of the Montgomery County Correctional Facility on which to base these claim. Unlike in *Wright* where Mr. Wright alleged no fewer than eight specific policies and customs leading to his constitutional injury, Mr. Hailey does not identify one policy or custom contributing to his sexual harassment and abuse or the prison officials' failure to protect him from such abuse. The only person he alleges to have supervisory power is Warden Algarin, who he alleges "is responsible for the conduct of [his] staff and to insure [sic] once a sexual abuse claim is reported to remove [the] victim or [his] staff to insure [sic] the abuse does not continue" and "failed his duties" by not following this procedure.[95] He alleges he "repeatedly on more than one occasion through request slips wrote [Warden] Algarin about the [sexual harassment] incident and never got a response," as "[Warden] Algarin turned a 'blind-eye' because the sexual abuse continued and in each incident got worst [sic]."[96]

13

Mr. Hailey fails to allege Captain Moyer, Major Carbo, Major Brown, Captain Smith, Lieutenant Zerr, Captain Berger, or Correctional Officer Errington have supervisory powers and allowed Correctional Officer Beard to act contrary to established policy. He failed to plead Captain Moyer, Major Carbo, Major Brown, Captain Smith, Lieutenant Zerr, Captain Berger, or Correctional Officer Errington proceeded with willful blindness as to Correctional Officer Beard's ignorance of Montgomery County Correctional Facility's policies, or supervisors knew Correctional Officer Beard sexually harassed and abused Mr. Hailey, yet allowed him to continue such behavior despite this knowledge. Mr. Hailey does not plead a custom of Montgomery County Correctional Facility or its supervisory employees turning a blind eye to individuals violating its established policies.

Mr. Hailey does not plead the prison officials, including Warden Algarin, acted in a deliberately indifferent manner or acquiesced in a specified custom of inaction.[97] Unlike in *Daniels*, Mr. Hailey's claims are based solely on a *respondeat superior* theory, precluding supervisory liability under *Monell*.

Based on Mr. Hailey's allegations, it appears Warden Algarin's awareness of the unconstitutional conduct and his inaction relating to the offending conduct fits squarely under Mr. Hailey's "failure to protect" claim against Warden Algarin. But even considering Mr. Hailey's *pro se* status and the early stage of this proceeding, we cannot allow his *Monell* claims against the prison officials in their official capacities to proceed solely on a *respondeat superior* theory. We deny these civil rights claims relating to the prison officials in their official capacities.

## E.     Mr. Hailey pleads a failure to protect claim against Warden Algarin, but not against the other prison officials.

Major Carbo, Major Brown, Captain Smith, Warden Algarin, and Lieutenant Zerr move to dismiss Mr. Hailey's section 1983 claims against them regarding their failure to protect him from

14

Correctional Officer Beard's sexual harassment and abuse, as his failure to protect claims against them are purely conclusory and lack factual foundation. We agree as to Major Carbo, Major Brown, Captain Smith, and Lieutenant Zerr, but disagree as to Warden Algarin.

Our Court of Appeals has not articulated the standard governing sexual harassment and abuse in the pretrial detainee context, but it "ha[s] stated in dicta . . . the state of mind requirement for prisoners' failure to protect claims—'deliberate indifference'—applies also to pretrial detainees' claims."[98] "[A] pretrial detainee presenting a failure-to-protect claim must plead that the prison official acted with deliberate indifference to the detainee's health or safety."[99] The Eighth Amendment's "deliberate indifference" standard is a subjective one, requiring "the prison official-defendant[s] must actually have known or been aware of the excessive risk to inmate safety."[100] A plaintiff must demonstrate "the defendant was subjectively aware of the risk of harm to the plaintiff's health or safety, and disregarded it."[101]

"It is well established [] merely negligent misconduct will not give rise to a claim under [section] 1983; the [Commonwealth] defendant must act with a higher degree of intent."[102] Judge Smith in *E.D. v. Sharkey* details the governing law confirming merely alleging "a defendant knew of a risk to the plaintiff is insufficient to support an inference of deliberate indifference absent any factual allegations supporting that conclusion, and thus cannot alone establish facial plausibility."[103] Judge Smith dismissed the inmate's "failure to protect" allegations against the prison guard as the inmate's "conclusory statements [the prison official] noticed the attention [another inmate] directed towards her and knew about their intimate relationship are not entitled to a presumption of truth."[104] A fair comparison is found in *Bistrian v. Levi* where our Court of Appeals concluded the inmate plead a plausible failure to protect claim by alleging he advised several prison officials of a specific violent threat made by a specific inmate and the officers still

15

placed him "in the recreation yard with . . . [inmates] who knew of his prior complicity with prison authorities." [105]

### 1. Mr. Hailey pleads Warden Algarin's deliberate indifference to his health and safety.

Mr. Hailey alleges Warden Algarin "is responsible for the conduct of [his] staff and to insure [sic] once a sexual abuse claim is reported to remove [the] victim or [his] staff to insure [sic] the abuse does not continue," and Warden Algarin "failed his duties" by not following this procedure.[106] He alleges he "repeatedly on more than one occasion through request slips wrote [Warden] Algarin about the [sexual harassment] incident and never got a response," as "[Warden] Algarin turned a 'blind-eye' because the sexual abuse continued and in each incident got worst [sic]."[107] Mr. Hailey wrote to Warden Algarin on August 30, 2017 to notify him of Correctional Officer Beard's consistent sexual harassment and abuse.[108]

Mr. Hailey's allegations against Warden Algarin are not generalized allegations. Instead he pleads Warden Algarin personally knew of the sexual harassment—from the request slips, including the one specifying the abuse and the abuser attached to Mr. Hailey's Complaint—and he provides sufficient facts from which we can conclude Warden Algarin violated his rights by acting deliberately indifferent to a known risk to Mr. Hailey's health and safety.

Mr. Hailey alleges he wrote Warden Algarin about the sexual harassment and abuse by Correctional Officer Beard, but Warden Algarin did not respond. Unlike his allegations against the other named prison officials, Mr. Hailey's allegations against Warden Algarin establish facial plausibility, as they are backed by other fact allegations supporting an inference of Warden Algarin's deliberate indifference. The August 30, 2017 letter notifying Warden Algarin of Correctional Officer Beard's sexual harassment and abuse demonstrates Warden Algarin may have had personal knowledge of Correctional Officer Beard's sexual harassment and abuse, and Mr.

Hailey alleges Warden Algarin "turned a 'blind eye'" to the situation as the "sexual abuse continued and in each incident got worst [sic]."[109] Because his allegations against Warden Algarin are not simply conclusory like those in *Sharkey* and are backed by fact allegations supporting Warden Algarin's plausible personal, subjective knowledge of the specific risk to Mr. Hailey's health and safety, they satisfy the deliberate indifference standard required for failure to protect claims under section 1983 and are entitled to a presumption of truth at this preliminary stage.

### 2. Mr. Hailey fails to plead Majors Carbo and Brown's, Captain Smith's, and Lieutenant Zerr's deliberate indifference to his health and safety.

Mr. Hailey alleges he spoke to Majors Carbo and Brown, Captain Smith, and Lieutenant Zerr about the "unbearable encounters with [Correctional Officer] Beard . . . to which he was met with threats to stop reporting it or be put in segragation [sic]."[110] He also alleges he asked them for grievances, but they denied his requests and "swept [Correctional Officer Beard's sexual harassment and abuse] under the rug."[111] Majors Carbo and Brown also allegedly told Mr. Hailey he did not "know when to keep [his] mouth shut" after Mr. Hailey asked why prison officials on multiple occasions chose to search his cell and destroyed his property.[112] Mr. Hailey alleges he spoke to Captain Smith about the "unbearable encounters with [Correctional Officer] Beard . . . to which he was met with threats to stop reporting it or be put in segragation [sic]."[113] He also alleges he asked Captain Smith for grievances, but he denied his requests and "swept [Correctional Officer Beard's sexual harassment and abuse] under the rug."[114]

These generalized allegations of "knowing" of the sexual harassment but "swept it under the rug" do not provide sufficient facts from which we can conclude these officers acted with deliberate indifference. There is no specificity in Mr. Hailey's allegations allowing an inference they personally knew of the risk to Mr. Hailey's health and safety and failed to protect him from the known risk. Though he alleges he told them "of the sexual abuse and [they] failed to protect

17

[him]," [115] these statements are purely conclusory. Like in *Sharkey*, Mr. Hailey's allegations he told them of the risk Correctional Officer Beard posed to him cannot alone establish facial plausibility, as they are insufficient to support an inference of deliberate indifference absent other factual allegations supporting such a conclusion. Mr. Hailey would need to show notice to these officers including how they would know. Because his conclusory allegations against these officers do not satisfy the deliberate indifference standard required for failure to protect claims under section 1983, they are not entitled to a presumption of truth and must be dismissed without prejudice. Mr. Hailey may seek to amend to plead their specific notice: what did he tell them and when? What role did they have to protect him from Correctional Officer Beard? Unlike his claims against Warden Algarin, Mr. Hailey does not plead the facts necessary to show these officials deliberate indifference.

## F. Mr. Hailey fails to plead a claim against Captain Berger for laughing during his conversation with Investigator John Doe.

Captain Berger argues Mr. Hailey's civil rights claim against him must be dismissed as laughing constitutes verbal abuse and is not actionable conduct. We agree.

"Allegations of verbal abuse or threats, unaccompanied by injury or damage, are not cognizable under [section] 1983, regardless of whether the inmate is a pretrial detainee or sentenced prisoner." [116] "Verbal abuse of a prisoner, even of the lewd variety . . . , is not actionable under [section] 1983." [117] Mr. Hailey alleges Captain Berger "witnessed [Investigator] John Doe's threats [against him to stop making reports of Correctional Officer Beard's sexual harassment and abuse or risk losing a deal on his case] and just laughed." [118] Mr. Hailey does not allege Captain Berger verbally abused or threatened him, or any injury or damage resulting from Captain Berger's laughter. Even if Captain Berger's gesture of laughing is construed as verbal harassment, it still

18

fails to rise to a level of violating Mr. Hailey's civil rights and must be dismissed without prejudice.[119]

## G.  Mr. Hailey has no procedural due process right to specific prison grievance procedures.

Correctional Officer Errington argues any claims against him must be dismissed as they are not based upon his personal involvement in the constitutional violation, and Mr. Hailey has no right to a specific prison grievance procedure. We agree.

The first step in analyzing a procedural due process claim "is [determining] whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment."[120] To present a cognizable procedural due process claim under the Fourteenth Amendment, the claim must involve a protected interest.[121] For inmates, the Due Process Clause's safeguards are triggered only when circumstances "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."[122] Where an inmate has no protected interest relating to his claim, there cannot be deprivation of due process requiring constitutional redress.[123]

"[A]lthough prisoners have a constitutional right to seek redress of grievances as part of their right of access to courts, this right is not compromised by [prison officials' failure] to address these grievances."[124] "Access to prison grievance procedures is not a constitutionally-mandated right, and allegations of improprieties in the handling of grievances do not state a cognizable claim under [section] 1983."[125] In *Burnside v. Moser*, our Court of Appeals affirmed "[i]nmates do not have a constitutionally protected right to the prison grievance process."[126] Our Court of Appeals in *Burnside* did not commend failure to process grievances, but noted such behavior by prison officials "does not rise to the level of [violating] a constitutional right."[127]

19

Mr. Hailey solely alleges Correctional Officer Errington "was responsible for turning in [his] initial grievance as [he] placed it directly in [Correctional Officer Errington's] care and custody," and the "grievance was misplaced or lost by one of the formentioned [sic] bad actor's [sic] in Montgomery County Correctional Facility."[128] Mr. Hailey concedes Correctional Officer Errington's only involvement in his claims relates to Correctional Officer Errington's handling of Mr. Hailey's initial grievance, and his inability to identify who exactly lost or misplaced the grievance. As Mr. Hailey does not have a constitutionally protected right to specific prison grievance procedures—including redress from the improprieties in prison grievance handling— his claims against Correctional Officer Errington must be dismissed without prejudice.

## H. Mr. Hailey fails to plead conspiracy or intentional infliction of emotional distress.

Mr. Hailey alleges Investigator John Doe, Captain Moyer, Major Carbo, Major Brown, Captain Smith, Lieutenant Zerr, Captain Berger, and Correctional Officer Errington colluded "to cover up [Correctional Officer] Beard's sexual abuse and misconduct."[129] Because Mr. Hailey fails to plead the requisite requirements for collusion under section 1983, we must dismiss his collusion claims against the named prison officials without prejudice.

The Supreme Court in *Bell Atlantic Corp. v. Twombly* concluded "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[130] To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead factual allegations "rais[ing] a right to relief above the speculative level."[131] "Bare conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy. The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such agreement can be inferred."[132]

Mr. Hailey does not plead facts allowing an inference Investigator John Doe, Captain Moyer, Major Carbo, Major Brown, Captain Smith, Lieutenant Zerr, Captain Berger, and Correctional Officer Errington acted in concert and joint action to "cover up [Correctional Officer] Beard's sexual abuse and misconduct."[133] Instead Mr. Hailey concludes "the evidence suggest[s] their [sic] was a collusion by the named Defendents [sic] to cover up [Correctional Officer] Beard's sexual abuse and misconduct" without providing allegations supporting such concert and joint action among the individuals.[134] He fails to plead facts. Without alleging an agreement or making averments supporting concerted action, Mr. Hailey's allegations are insufficient to allege an agreement or concerted action among Investigator John Doe, Captain Moyer, Major Carbo, Major Brown, Captain Smith, Lieutenant Zerr, Captain Berger, and Correctional Officer Errington, and his claim cannot survive their motion to dismiss.[135] We dismiss without prejudice Mr. Hailey's section 1983 claim against Investigator John Doe, Captain Moyer, Major Carbo, Major Brown, Captain Smith, Lieutenant Zerr, Captain Berger, and Correctional Officer Errington for their alleged collusion in covering up Correctional Officer Beard's sexual abuse and misconduct for failure to plausibly plead concerted action.

Mr. Hailey also refers to, but fails to plead, facts allowing him to proceed on an intentional or negligent infliction of emotional distress claim. He alleges "[Correctional Officer] Beard's actions caused [him] to suffer grave emotional distress at the time of the incident . . . [and his] sexual abuse continues to haunt [him] to this day . . . ."[136]

To state a claim for intentional infliction of emotional distress, Mr. Hailey must plead: "(1) extreme and outrageous conduct (2) that intentionally or recklessly (3) causes emotional distress (4) which must be severe."[137] Conduct is considered outrageous where it is "so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be

regarded as atrocious, and utterly intolerable in a civilized society."[138] "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'"[139]

To allege a claim for negligent infliction of emotional distress, Mr. Hailey must prove one of the following four elements: "(1) [] the defendant had a contractual or fiduciary duty toward him; (2) [] Plaintiff suffered from a physical impact; (3) Plaintiff was in a 'zone of danger' and at risk of immediate physical injury; or (4) Plaintiff had a contemporaneous perception of tortious injury to a close relative."[140] "A [p]laintiff who alleges negligent infliction of emotional distress must suffer immediate and substantial physical harm."[141]

These claims may not proceed unless Mr. Hailey pleads the requisite elements of either intentional or negligent infliction of emotional distress against specified parties.

### III. Conclusion

We deny summary judgment against Mr. Hailey based on failure to exhaust as he alleges facts demonstrating the grievance procedure's unavailability, excluding his obligation to exhaust the remedy and precluding the prison officials from claiming exhaustion as an affirmative defense. We may revisit this issue following discovery.

We analyze Mr. Hailey's civil rights claims while a pretrial detainee under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment's cruel and unusual punishment standard. As Mr. Hailey has a right to be free from sexual assault by prison employees while a pretrial detainee and pleads sexual harassment and abuse by Correctional Officer Beard, Mr. Hailey pleads valid Fourteenth Amendment claims against Correctional Officer Beard. We also find Mr. Hailey pleads a valid failure to protect claim against Warden Algarin, but not against Major Carbo, Major Brown, Captain Smith, or Lieutenant Zerr.

Even considering Mr. Hailey's *pro se* status and the early stage of this proceeding, we cannot allow his *Monell* claims against the prison officials in their official capacities to proceed solely on a *respondeat superior* theory, and we dismiss these civil rights claims relating to the prison officials in their official capacities without prejudice. We dismiss without prejudice Mr. Hailey's civil rights claim against Captain Berger as laughing constitutes verbal abuse, which is not actionable conduct. We dismiss without prejudice Mr. Hailey's claims relating to Correctional Officer Errington possibly losing or misplacing his grievances as they are not based upon Correctional Officer Errington's personal involvement in Mr. Hailey's sexual harassment and abuse by Correctional Officer Errington, and Mr. Hailey has no right to a specific prison grievance procedure. We dismiss Mr. Hailey's references to Pennsylvania state law claims for collusion and emotional distress as failing to state a claim without prejudice.

---

¹ "[A] Complaint, including a *pro se* Complaint, must conform with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure," "requir[ing] [] the Complaint be simple, concise, direct and set forth 'a short and plain statement of the claim showing [] the pleader is entitled to relief.'" *Atun El v. United States*, No. 13-3970, 2014 WL 1281230, at *1 (E.D. Pa. Mar. 31, 2014) (quoting Fed. R. Civ. P. 8(a)(2)). But the Supreme Court holds the allegations in a *pro se* pleading must be held to a "less stringent standard[] than formal pleadings drafted by lawyers . . . ." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). "[B]ecause [plaintiff] has filed his complaint *pro se*, we must liberally construe his pleadings, and we will apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citing *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002)).

² ECF Doc. No. 11 at ¶ 18.

³ *Id.* at ¶ 19.

⁴ *Id.* at ¶¶ 19–20.

⁵ *Id.* at ¶ 20.

⁶ *Id.* at ¶ 21.

⁷ *Id.*

23

[8] *Id.* at ¶ 22.

[9] *Id.* at ¶ 23.

[10] *Id.* at ¶ 24.

[11] *Id.* at ¶ 25.

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.* at ¶ 26.

[16] *Id.* at ¶ 27.

[17] *Id.*

[18] *Id.* at ¶ 28.

[19] *Id.*

[20] *Id.*

[21] *Id.* at ¶ 30.

[22] *Id.* at ¶ 40, Ex. A.

[23] *Id.* at ¶ 30.

[24] *Id.* at ¶ 31.

[25] *Id.*

[26] *Id.* at ¶ 32.

[27] *Id.* at ¶ 33.

[28] *Id.* at ¶ 29.

[29] *Id.*

[30] *Id.* at ¶¶ 34, 36.

[31] *Id.* at ¶¶ 35, 37.

[32] *Id.* at ¶ 39.

[33] *Id.* at ¶ 38.

[34] *Id.* at ¶ 39.

[35] *Id.* at ¶ 41, Ex. B, Ex. C.

[36] *Id.* at ¶ 42, Ex. D.

[37] *Id.*

[38] *Id.* at ¶¶ 5–16.

[39] *Id.* at ¶ 44.

[40] *Id.* at ¶ 45.

[41] *Id.* at ¶ 46.

[42] *Id.* at ¶ 47.

[43] When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences [potentially] drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content [allowing] the court to draw the reasonable inference [] the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[44] Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is "genuine" if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Services*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). On a motion for

summary judgment, "we view the facts and draw all reasonable inferences in the light most favorable to the nonmovant." *Pearson*, 850 F.3d at 533–34 (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)). "The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hospital of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Willis*, 808 F.3d at 643 (citing *Celotex*, 477 U.S. at 322–23).

[45] *West v. Atkins*, 487 U.S. 42, 48 (1988).

[46] *Hall-Wadley v. Maintenance Department*, 386 F. Supp. 3d 512, 516–17 (E.D. Pa. 2019) (citing *Groman v. Township of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995)).

[47] *Hall-Wadley*, 386 F. Supp. 3d at 516–17 (citing *City of Rancho Palos Verdes, California v. Abrams*, 544 U.S. 113, 119–20 (2005)).

[48] 42 U.S.C. § 1997e(a).

[49] *Clemens v. Warden SCI Greene*, 290 F. Supp. 3d 388, 393 (E.D. Pa. 2018).

[50] *Id.* (quoting *Spruill v. Gillis*, 372 F.3d 218, 222 (3d Cir. 2004)).

[51] *Id.* (citing *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002)).

[52] *Id.* (concluding inmate Mr. Clemens "pled facts precluding [d]efendants' affirmative defense of exhaustion" where Mr. Clemens filed the appropriate grievance forms but the prison did not process those forms); *see Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003) (prison officials denied prisoner the necessary grievance forms); *see also McKinney v. Guthrie*, 309 F. App'x 586, 588 (3d Cir. 2009) (prison officials "thwarted his efforts to pursue administrative remedies").

[53] *Brown v. Croak*, 312 F.3d 109, 112–13 (3d Cir. 2002) (quoting *Camp v. Brennan*, 219 F.3d 279, 281 (3d Cir. 2000)); *see Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016) (laying out three circumstances where "an administrative remedy, though officially on the books, is not capable of use to obtain relief," excepting an inmate's duty to exhaust "available" remedies).

[54] *Ross*, 136 S. Ct. at 1859.

[55] *Id.*; *see Smith v. Merline*, 719 F. Supp. 2d 438, 447 (D.N.J. 2010) (illustrating how a court should not dismiss a prisoner's civil rights claims for failure to exhaust administrative remedies and providing several examples of circumstances permitting suit even where remedies are not technically "exhausted").

[56] ECF Doc. No. 11 at ¶ 27.

[57] *Id.* at ¶ 31.

[58] *Id.* at ¶ 39.

[59] *Id.* at ¶ 40, Ex. A.

[60] *Id.* at ¶¶ 41-42, Ex. B, Ex. C.

[61] *Southerland v. County of Hudson*, 598 F. App'x 62, 64 (3d Cir. 2015).

[62] *Higgins v. Breyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Department of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999)).

[63] *See Hall-Wadley*, 386 F. Supp. 3d at 516–17; *Banks v. Lackawanna County Commissioners*, 931 F. Supp. 359, 362 (M.D. Pa. 1996) ("As a pretrial detainee Banks' claim is properly construed as a purported violation of the right of due process under the Fourteenth Amendment to the United States Constitution rather than as an alleged violation of the prohibition against cruel and unusual punishment found in the Eighth Amendment.").

[64] *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).

[65] *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244 (1983).

[66] *Hubbard*, 399 F.3d at 167 n.23; *see Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir. 2000) ("[P]retrial detainees are entitled to at least as much protection as convicted prisoners, so the protections of the Eighth Amendment would seem to establish a floor of sorts.") (quoting *Kost v. Kozakiewicz*, 1 F.3d 176, 188 n.10 (3d Cir. 1993)).

[67] *Bell v. Wolfish*, 441 U.S. 520, 535–36 (1979); *Paulino v. Burlington County Jail*, 438 F. App'x 106, 109 (3d Cir. 2011) ("Under the Due Process Clause, 'the proper inquiry is whether [the challenged] conditions amount to punishment of the detainee.'") (quoting *Bell*, 441 U.S. at 535).

[68] *Bistrian v. Levi*, 696 F.3d 352, 372–73 (3d Cir. 2012) (citing *Bell*, 441 U.S. at 540).

[69] *Bell*, 441 U.S. at 538–39.

[70] *Id.*; *Hubbard*, 399 F.3d at 159–60.

[71] *E.D. v. Sharkey*, 928 F.3d 299, 307 (3d Cir. 2019).

[72] *Id.* at 306–07 ("This Circuit has long viewed the legal rights of an immigration detainee to be analogous to those of a pretrial detainee").

[73] *Id.* at 307 (citing *Stevenson v. Carroll*, 495 F.3d 62, 67 (3d Cir. 2007)). "Panels of this Circuit have repeatedly held in unpublished decisions that an immigration detainee is the equivalent of a pretrial detainee, and that a pretrial detainee's constitutional claims are considered under the Due Process Clause." *Id.* at n.3 (citing *Adekoya v. Chertoff*, 431 F. App'x 85, 88 (3d Cir. 2011); *Contant v. Sabol*, 431 F. App'x 177, 178 (3d Cir. 2011); *Foreman v. Lowe*, 261 F. App'x 401, 403 (3d Cir. 2008); *Harvey v. Chertoff*, 263 F. App'x 188, 191 (3d Cir. 2008); *Dahlan v. Department of Homeland Security*, 215 F. App'x 97, 100 (3d Cir. 2007)).

[74] *Sharkey*, 928 F.3d at 307.

[75] ECF Doc. No. 11 at ¶ 21.

[76] *Id.*

[77] *Id.* at ¶ 25.

[78] *Id.* at ¶ 26.

[79] *Id.* at ¶ 24.

[80] *Sharkey*, 928 F.3d at 307.

[81] *Aleem-X v. Westcott*, 347 F. App'x 731, 731 (3d Cir. 2009).

[82] *Cf. Randall v. County of Berks, Pennsylvania*, No. 14-5091, 2015 WL 5027542, at *13 (E.D. Pa. Aug. 24, 2015) ("Even absent probable cause, a strip search of a pretrial detainee does not violate the Fourth [and Fourteenth] Amendment[s] provided that the search is not unreasonable . . . . Courts [testing reasonableness] must consider the scope of that particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.").

[83] *Hunter v. Prisbe*, 984 F. Supp. 2d 345, 353 (M.D. Pa. 2013) (citing *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 695 (1978)).

[84] *Stevens v. Borough*, No. 11-7216, 2013 WL 2292047, at *2 (E.D. Pa. May 23, 2013) (quoting *Monell*, 436 U.S. at 690–91).

[85] *Id.* at *3 (quoting *Kelly v. Borough of Carlisle*, 622 F.3d 248, 263, (3d Cir. 2010)).

[86] *Stevens*, 2013 WL 2292047, at *3 (quoting *Monell*, 436 U.S. at 694).

[87] *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007).

[88] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (internal citations omitted).

[89] *Daniels v. Morris County Correctional Facility*, No. 06-2460, 2006 WL 2524177, at *2, *4 (D.N.J. Aug. 30, 2006).

[90] *Id.* at \*4.

[91] *Id.*; *see also Abuhouran v. Acker*, No. 04-2265, 2005 WL 1532496, at \*4 (E.D. Pa. June 29, 2005) ("Despite defendants' arguments to the contrary, plaintiff's allegations that [the supervising prison officials] had knowledge of and acquiesced in plaintiff's alleged ethnic harassment by [another prison official] are sufficient to sustain a complaint at this stage in the proceedings.").

[92] *Wright v. City of Philadelphia*, 229 F. Supp. 3d 332, 336 (E.D. Pa. 2017); *cf. Thomas v. City of Philadelphia*, 290 F. Supp. 3d 371, 387 (E.D. Pa. 2018) (dismissing a *Monell* claim where the plaintiff did not sufficiently allege a municipal custom or policy as he alleged only one other instance of the defendants engaging in the same violative conduct).

[93] *Wright*, 229 F. Supp. 3d at 337.

[94] *McTernan v. City of York, Pennsylvania*, 564 F.3d 636, 659 (3d Cir. 2009).

[95] ECF Doc. No. 11 at ¶ 46.

[96] *Id.* at ¶ 30.

[97] *See McTernan*, 564 F.3d at 658–59 ("To satisfy the pleading standard, [plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was.").

[98] *Edwards v. Northampton County*, 663 F. App'x 132, 135 (3d Cir. 2016) (finding no reason to apply a different standard in a case involving a pretrial detainee's conditions of confinement, as "[they] have applied the 'deliberate indifference' standard both in cases involving prisoners . . . and pretrial detainees"); *see Colburn v. Upper Darby Township*, 946 F.2d 1017, 1024 (3d Cir. 1991).

[99] *Burton v. Kindle*, 401 F. App'x 635, 638 (3d Cir. 2010) (per curiam).

[100] *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001); *see also Bistrian*, 696 F.3d at 367 ("It is not sufficient [] the official should have known of the risk. A plaintiff can, however, prove an official's actual knowledge of a substantial risk to his safety [through circumstantial evidence].") (internal citations omitted).

[101] *Sharkey*, 2017 WL 2126322, at \*4; *see, e.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (concluding "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety . . . .").

[102] *Burton*, 401 F. App'x at 637–38 ("In assessing where on the state-of-mind continuum misconduct must fall to establish a [section] 1983 claim, we have settled on 'deliberate indifference' [] in cases involving prisoners . . . .").

[103] *Sharkey*, 2017 WL 2126322, at \*6–7.

[104] *Id.* at \*7.

[105] *Bistrian*, 696 F.3d at 368–71.

[106] ECF Doc. No. 11 at ¶ 46.

[107] *Id.*

[108] *Id.* at ¶ 40, Ex. A.

[109] *Id.* at ¶¶ 30, 40, Ex. A.

[110] *Id.* at ¶ 27.

[111] *Id.*

[112] *Id.* at ¶ 29.

[113] *Id.* at ¶ 27.

[114] *Id.*

[115] *Id.* at ¶¶ 34–35.

[116] *Brown v. Hamilton Police Department*, No. 13-260, 2013 WL 3189040, at \*2 (D.N.J. June 21, 2013); *see Willson v. Yerke*, No. 10-1376, 2013 WL 6835405, at \*8 (M.D. Pa. Dec. 23, 2013), *aff'd*, 604 F. App'x 149 (3d Cir. 2015) ("[M]ere gestures or verbal harassment do not give rise to a substantive due process claim"); *see also Abuhouran*, 2005 WL 1532496, at \*4 ("It is well established . . . verbal harassment, or threats standing alone do not state a constitutional claim").

[117] *Aleem-X*, 347 F. App'x at 731.

[118] ECF Doc. No. 11 at ¶ 31–32.

[119] *See, e.g.*, *Rodriguez v. Baeli*, No. 10-4242, 2011 WL 42998, at \*2 (D.N.J. Jan. 5, 2011) ("Since the [p]laintiff's allegations that Gonzalez laughed in the [p]laintiff's presence are not cognizable under [section] 1983, . . . [p]laintiff's claims will be dismissed for failure to state a claim upon which relief may be granted."); *Collins v. Cundy*, 603 F.2d 825 (10th Cir. 1979) (dismissing prisoner's claim where prison guard laughed at him and threatened to hang him).

[120] *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000).

[121] *See Brown v. Hannah*, 850 F. Supp. 2d 471, 476 (M.D. Pa. 2012) ("If there is no protected liberty or property interest, it is unnecessary to analyze what procedures were followed when an alleged deprivation of an interest occurred.").

[122] *Sandin v. Connor*, 515 U.S. 472, 484 (1995).

[123] *Shoats*, 213 F.3d at 143; *cf. Eddowes v. Director, State Department of Corrections, et al.*, No. 18-125, 2018 WL 2248751, at *9 (M.D. Pa. Apr. 9, 2018) ("More fundamentally, [inmate's claim prison officials failed to respond to his grievances] fails as a matter of law 'because there is no apparent obligation for prison officials to investigate prison grievances.' Therefore, the alleged failure to adequately respond to these grievances does not support a free-standing constitutional tort claim, and this claim should be dismissed." (quoting *Paluch v. Secretary of Pennsylvania Department of Corrections*, 442 F. App'x 690, 695 (3d Cir. 2011)).

[124] *Booth v. King*, 346 F. Supp. 2d 751, 761 (E.D. Pa. 2004).

[125] *Glenn v. DelBalso*, 599 F. App'x 457, 459 (3d Cir. 2015); *Booth*, 346 F. Supp. 2d at 761 ("Prisoners are not constitutionally entitled to a grievance procedure and the state creation of such a procedure does not create a liberty interest requiring procedural protections under the Fourteenth Amendment.").

[126] *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005).

[127] *Id.*; *see also Dickens v. Taylor*, 464 F. Supp. 2d 341, 353 (D. Del. 2006) ("Plaintiff cannot maintain constitutional claims based upon inadequate grievances system," grievance denial, or failure to address his grievances).

[128] ECF Doc. No. 11 at ¶ 38.

[129] *Id.* at ¶ 47.

[130] *Bell Atlantic Corp.*, 550 U.S. at 555; *see Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting courts "are not bound to accept as true a legal conclusion couched as a factual allegation" on a motion to dismiss).

[131] *Bell Atlantic Corp.*, 550 U.S. at 555.

[132] *Thomas v. U.S. Airways*, No. 13-6121, 2014 WL 1910245, at *3 (E.D. Pa. May 13, 2014) (quoting *Flanagan v. Shively*, 783 F. Supp. 922, 928 (M.D. Pa. 1992)).

[133] ECF Doc. No. 11 at ¶ 47.

[134] *Id.*

[135] *See, e.g.*, *Strategic Environmental Partners, LLC v. Bucco*, 184 F. Supp. 3d 108, 132–33 (D.N.J. 2016) (dismissing plaintiff's section 1983 conspiracy claim under Rule 12(b)(6) where plaintiffs alleged "[e]ach [d]efendant, in concert and conspiracy with the other [d]efendants, intentionally violated the civil rights of the [p]laintiffs," as "simply alleging 'agreement' without facts from which that agreement can be inferred is insufficient.") (quoting *Martinez v. New Jersey*, No. 11-2223, 2012 WL 2116407, at *6 (D.N.J. June 11, 2012)); *Thomas v. U.S. Airways*, No. 13-6121,

2014 WL 1910245, at *3 (E.D. Pa. May 13, 2014) ("Merely pleading that U.S. Airways employees 'made statements that they knew to be false and about [plaintiff] . . . between themselves, to Philadelphia Police Officers, and to other presently unknown persons,' is insufficient to allege an agreement or concerted action between parties and cannot permit plaintiff's claim to survive defendants' motion.") (internal citation omitted); *Rodriguez v. Widener University*, No. 13-1336, 2013 WL 3009736, at *4 (E.D. Pa. June 17, 2013) (finding plaintiff failed to plausibly plead the conspiracy element of his section 1983 claim where "there [was] nothing . . . in the [c]omplaint from which a conspiratorial agreement or concerted action [could] be inferred to plausibly plead a constitutional conspiracy.").

[136] ECF Doc. No. 11 at ¶ 45.

[137] *White v. Ottinger*, 442 F. Supp. 2d 236, 251 (E.D. Pa. 2006) (citing *Hoy v. Angelone*, 691 A.2d 476, 482 (Pa. Super. 1997)).

[138] *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998) (quoting *Buczek v. First National Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa. Super. 1987)).

[139] *Strickland v. University of Scranton*, 700 A.2d 979, 987 (Pa. Super. 1997).

[140] *Stock v. Braswell*, No. 16-6412, 2017 WL 3279059, at *8 (E.D. Pa. Aug. 2, 2017) (quoting *Doe v. Philadelphia Community Health Alternatives AIDS Task Force*, 745 A.2d 25, 27 (Pa. Super. 2000)).

[141] *Stock*, 2017 WL 3279059, at *8 (quoting *Doe*, 745 A.2d at 28).