## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ALVIN MAURICE HAILEY** | **: CIVIL ACTION** |
| | : |
| **v.** | **: NO. 19-2171** |
| | : |
| **C.O. FRED BEARD, *et al.*** | : |
| | : |

## MEMORANDUM

**KEARNEY, J.**                                                                                    **January 23, 2020**

Correctional officers' sexual assaults upon incarcerated citizens is a subject of frequent study presumably known to our correctional institutions. For example, the Department of Justice confirmed men and women in custody reported (ignoring those who feared to report) 24,661 sexual assaults in 2015 while in custody.[1] Many of these claims cannot be substantiated. Of those substantiated, 42% involved the officers and staff we trust most to supervise the rehabilitation of those repaying their debt to society in prison.[2] We are uncertain as to how many or the percentage of these cases involved same-sex assault but the Department of Justice's June 2012 data collection profile under the Prison Rape Elimination Act of 2003 reported more than 75% of the sexual misconduct involves a male inmate with a female correctional employee.[3]

We today review same-sex sexual assault upon a man awaiting trial by a male officer employed at the Montgomery County Correctional Facility. The pretrial detainee specifically alleges he told several supervising officers, including the Warden, of his specific concerns regarding this alleged predator. Rather than assist, he alleges they (and an investigator from the District Attorney's office) responded but without corrective action and threatened him more than once. We do not know today whether these allegations are true but they are well plead as to the alleged assaults and potential deliberate indifference by supervisors specifically told of the events

and obligated to protect the male detainee. While we do not find the pretrial detainee today pleads the Montgomery County Correctional Facility and its policymakers have a policy or custom of promoting or ignoring sexual assault by correctional officers, we otherwise find the pretrial detainee pleads a claim to vindicate his constitutional rights, for conspiracy to cover-up the assaults by those who allegedly interacted with him, and for intentional infliction of emotional distress against the alleged officer-perpetrator.

## I. *Pro se* alleged facts[4]

The Commonwealth detained Alvin Maurice Hailey on August 30, 2017 at Montgomery County Correctional Facility while he awaited his criminal trial.[5] Correctional officers stripped searched Mr. Hailey upon his entry to the Facility.[6] Moments later, Correctional Officer Fred Beard escorted Mr. Hailey to his cell, then ordered Mr. Hailey to "get against his cell wall for a random pat down."[7] Mr. Hailey complied.[8] Officer Beard began the pat down at Mr. Hailey's "ankles and ran his fingers up [Mr. Hailey's] legs and thighs until eventually massaging [Mr. Hailey's] groin and penis."[9] Mr. Hailey asked Officer Beard: "Can you please stop, I'm feeling uncomfortable and this search is unwarranted."[10] Officer Beard replied: "Shut up bitch! This is my house, you do what I say, when I say it. Your [sic] my bitch now!"[11] Mr. Hailey immediately submitted written "request slips" and verbal complaints about this assault to Facility officers with supervisory power over Officer Beard, but he never received a response.[12]

Mr. Hailey advised prison officials about Officer Beard's alleged abuse in numerous ways. Mr. Hailey wrote in an August 30, 2017 complaint letter to Facility Warden Julio Algarin: "[Officer] Beard is sexually abusing me and harassing me everytime [sic] I see him. . . . Beard came to my cell . . . and made me get against the wall. He grabbed my dick and held my balls in his hand and said he wish [sic] I was his."[13] Mr. Hailey continued: "Everytime [sic] I call [the

2

Prison Rape Elimination Act hotline] and they send yall [sic] the report yall [sic] don't even do nuffin [sic]. . . . Can you meet with me so we can talk or send me to Philly."[14] Mr. Hailey also tried to alert Warden Algarin about the abuse multiple times through written request forms, but never received a response because the Warden and Facility officers "turned a 'blind-eye,'" and the abuse continued.[15]

Mr. Hailey made "face to face" complaints of the abuse to Captain Moyer, Captain Smith and Lieutenant Zerr "as they conducted their routine rounds" of inmate cells.[16] Upon lodging his complaint, the prison officers took Mr. Hailey to the "J & K block supervisor's office."[17] Each prison officer responded to Mr. Hailey with a dismissive remark or threat. Captain Moyer responded: "Grow a pair and man up!"[18] Lieutenant Zerr asked: "Is this how you want to start off your time? We can do this the easy way or the hard way."[19] Captain Smith brandished his can of pepper spray and while shaking the can threatened Mr. Hailey: "Let me hear something else about you snitching on my officer, I got something for you!"[20]

The Facility rehoused Mr. Hailey in the general population after a bail reduction hearing in the following months.[21] During this time, Mr. Hailey and Officer Beard encountered each other on a daily basis.[22] Officer Beard "would randomly strip [Mr. Hailey] without justification, blow kisses, stick his tongue through his index and middle finger in a sexual manner and make vulgar comments" to him.[23]

Following a visit with his parents on an unplead date, the Facility assigned Officer Beard as Mr. Hailey's strip search officer.[24] Mr. Hailey became uneasy because of his past encounters with Officer Beard.[25] During the strip search, Officer Beard ordered Mr. Hailey "to get fully naked."[26] Mr. Hailey complied.[27] Officer Beard then repeatedly ordered Mr. Hailey to "squat and cough."[28] Mr. Hailey complied several times but eventually refused.[29] Upon this refusal Officer

3

Beard threatened segregated housing and indefinite loss of visitation privileges if his insubordination continued.[30] Following the threat, Mr. Hailey "again complied and [Officer] Beard physically grabbed [Mr. Hailey's] buttocks and spread them apart. [Officer] Beard then got on his knees and asked [Mr. Hailey] to let him, '[t]aste him."[31]

Immediately after, Mr. Hailey went to Major Brown's office explaining the assault and requesting medical treatment.[32] Without investigating or making a report, Major Brown dismissed Mr. Hailey's complaint and denied the medical request.[33]

Over the following months, Mr. Hailey sought help in numerous ways but found dead ends at every turn. Mr. Hailey specifically reported this abuse to Captain Smith, Major Carbo, Major Brown, and Lieutenant Zerr on multiple occasions over an approximately seven-month period, but "was met with threats to stop reporting it or be put in segregation."[34] Over a nine month period, Mr. Hailey repeatedly asked each of Captain Smith, Major Carbo, Major Brown, and Lieutenant Zerr for grievance forms to report his abuse, but "was denied . . . more than [twenty-five] separate times" and "his request was 'swept under the rug' without investigation or a single report done."[35] Mr. Hailey also called the Prison Rape Elimination Act hotline "more than [ten] times" which sends a report to the Facility after each call.[36] But the officers who received these reports: Captain Moyer, Captain Berger, Captain Smith, Major Carbo, Major Brown, and Lieutenant Zerr, "never investigated or reported the incidents."[37]

When Mr. Hailey finally obtained a grievance form, he submitted an initial grievance to Officer Errington.[38] But Officer Errington "misplaced or lost" the form and the grievance ultimately "disappeared" after its submission.[39] Mr. Hailey never received a response.[40]

On an unspecified date in 2018, Mr. Hailey encountered Officer Beard on "housing unit G-1" where Officer Beard "told [other] inmates [Mr. Hailey] is a 'snitch.'"[41] Officer Beard later

4

told Mr. Hailey: "Nobody believes you. Your [sic] a low life scum, you have no rights."[42] Taron Ebo-Wilson, Mr. Hailey's cellmate, "witnessed on multiple occasions [Officer] Beard's inappropriate action[s] as well as the sexual abuse and harassment" directed at Mr. Hailey.[43]

In March 2018, Officer Beard tried to "hug and kiss" Mr. Hailey while groping Mr. Hailey's groin.[44] On April 25, 2018, Mr. Hailey wrote a letter to Montgomery County District Attorney Kevin Steele informing of the abuse and requesting an investigation.[45] Mr. Hailey described Officer Beard's ongoing abuse since his introduction to the Facility and officer's repeated disregard to his complaints.[46] Mr. Hailey wrote: "I reported these incidents multiple times to [the Prison Rape Elimination Act hotline] to which each report was swept under the rug. . . . [T]he brass at [the Facility] told me I'm a criminal I have no rights. Is this true?"[47]

The Montgomery County District Attorney's office sent Investigator John Doe to interview Mr. Hailey.[48] Mr. Hailey explained his abuse, but instead of investigating and reporting the complaint, Investigator Doe threatened Mr. Hailey (1) "to stop making reports or their [sic] would be no deal" on his pending criminal case,[49] and (2) he would prosecute Mr. Hailey "to the fullest extend [sic] of the law" if his reports continued.[50] Captain Berger "witnessed [Investigator] Doe's threats and just laughed."[51]

On April 13, 2019, now imprisoned at State Correctional Institution – Somerset, Mr. Hailey again wrote the Montgomery County District Attorney's office to report his sexual abuse and harassment while detained pretrial at the Facility.[52] Mr. Hailey explained how Officer Beard's sexual harassment escalated from unwanted "gestures or jokes" to "kissing and touching."[53] Mr. Hailey explained how Captain Moyer, Captain Berger and Warden Algarin responded to his multiple incident reports with threats to keep quiet.[54] "I was scared to speak up . . . by the retaliation I would face. . . . Someone in power abused their authority and touched me without my

5

consent made sexual advances toward me and I would like to press charges."[55] Mr. Hailey also sent a copy of his April 13, 2019 letter to Pennsylvania Attorney General Josh Shapiro.[56] Stephen St. Vincent, Director of Policy and Planning for the Pennsylvania Attorney General's office responded on May 8, 2019, informing his office forwarded Mr. Hailey's letter to the Montgomery County District Attorney's office and the Montgomery County Commissioners, as they are "the agencies . . . best equipped to handle this issue . . . ."[57]

Warden Algarin, Investigator Doe, Captain Moyer, Captain Berger, Major Carbo, Major Brown, Captain Smith, Lieutenant Zerr and Officer Errington allegedly colluded "to cover up [Officer] Beard's secxual [sic] abuse and misconduct. By failing to transfer [Mr. Hailey] or terminate [Officer] Beard" after submitted reports of abuse.[58] Officer Beard's abuse caused Mr. Hailey "to suffer great emotional distress at the time of the incident . . . [and] continues to haunt [Mr. Hailey] to this day."[59] Mr. Hailey currently receives therapy to treat his emotional distress.[60]

Mr. Hailey *pro se* sued: (1) Correctional Officer Beard; (2) Warden Julio Algarin; (3) Security Captain Berger; (4) District Attorney Investigator John Doe; (5) Captain Moyer; (6) Major Carbo; (7) Major Brown; (8) Captain Smith; (9) Lieutenant Zerr; and (10) Correctional Officer Warren Errington in both their individual and official capacities as Montgomery County Correctional Facility and Montgomery County District Attorney's office employees for his alleged sexual abuse as a pretrial detainee in Montgomery County Correctional Facility.[61]

In his *pro se* Amended Complaint, Mr. Hailey alleged Officer Beard violated the Eighth Amendment by sexually abusing him.[62] Mr. Hailey alleged Officer Beard's actions caused him to "suffer great emotional distress at the time of the incident . . . [and] continues to haunt [Mr. Hailey] to this day and [Mr. Hailey] is currently under the professional guidance of SCI-Somerset's department of psychiatry and psychology."[63] Mr. Hailey alleged Warden Algarin "is responsible

6

for the conduct of [his] staff and to insure [sic] once a sexual abuse claim is reported to remove [the] victim or [his] staff to insure [sic] the abuse does not continue," and Warden Algarin "failed his duties" by not following this procedure.[64] Mr. Hailey alleged Investigator Doe, Captain Moyer, Major Carbo, Major Brown, Captain Smith, Lieutenant Zerr and Officer Errington colluded "to cover up [Officer Beard's] sexual abuse and misconduct."[65]

Officer Beard, Captain Moyer, Major Carbo, Major Brown, Warden Algarin, Captain Smith, Lieutenant Zerr, Captain Berger and Officer Errington moved to dismiss the Amended Complaint for failure to state a claim and in the alternative for summary judgment, arguing Mr. Hailey failed to exhaust administrative remedies required by the Prison Litigation Reform Act.[66] We denied summary judgment after concluding genuine issues of fact existed concerning availability of Mr. Hailey's grievance procedure. We construed Mr. Hailey's Eighth Amendment cruel and unusual punishment claims as Fourteenth Amendment deliberate indifference of a pretrial detainee and denied dismissal against Officer Beard because Mr. Hailey properly plead sexual abuse by Officer Beard. We denied dismissal of Mr. Hailey's failure to protect claim against Warden Algarin, but we granted dismissal without prejudice to the same claims against Major Carbo, Major Brown, Captain Smith and Lieutenant Zerr. We dismissed without prejudice Mr. Hailey's official capacity claims because he based them solely on a *respondeat superior* theory, which is precluded under *Monell v. New York City Department of Social Services*.[67] We dismissed Mr. Hailey's Pennsylvania state law claims without prejudice. We granted Mr. Hailey leave to file a second amended complaint to possibly plead specific facts giving rise to claims for failure to protect and possible Pennsylvania state claims.[68]

We now review Mr. Hailey's *pro se* Second Amended Complaint. Mr. Hailey now pleads more specific facts supporting his failure to protect claims. For example, he alleges how and when

7

he notified certain prison officers and their response to his complaint. While we earlier allowed Mr. Hailey to proceed on his Fourteenth Amendment claim against Officer Beard and his failure to protect claim against Warden Algarin, we again address these issues as the Defendants again move to dismiss them. Mr. Hailey again alleges conspiracy and emotional distress.

## II. Analysis

Officer Beard, Warden Algarin, Captain Moyer, Captain Berger, Major Carbo, Major Brown, Captain Smith, Lieutenant Zerr and Officer Errington move to dismiss Mr. Hailey's Second Amended Complaint for failure to state a claim.[69] While they present arguments relating to the constitutional claim, they elected to not brief the conspiracy and emotional distress claims.

### A. Mr. Hailey may proceed on his civil rights claims against Officer Beard, Warden Algerin, Captain Moyer, Major Brown, Captain Smith, and Lieutenant Zerr.

"To state a claim under [section] 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[70] "Section 1983 is not a source of substantive rights, but merely a means of vindicating violations of federal constitutional and statutory rights committed by state actors."[71] To obtain redress under section 1983, a plaintiff must "establish[] an underlying violation of a federal constitutional or statutory right."[72]

#### a. Mr. Hailey alleges facts supporting a claim against Officer Beard for sexual abuse.

Officer Beard argues Mr. Hailey fails to sufficiently allege a plausible Fourteenth Amendment violation for sexual abuse because: (1) Mr. Hailey's allegations are conclusory and too scantily plead for a cognizable civil rights claim, and (2) the allegedly abusive pat downs described by Mr. Hailey did not violate standards of decency because Officer Beard used

8

reasonable force under the circumstances and because a comprehensive pat down of an inmate must be somewhat invasive.[73] We disagree.

"[U]nder the Due Process Clause [of the Fourteenth Amendment], a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."[74] "[C]onditions . . . reasonably related to a penal institution's interest in maintaining jail security typically pass constitutional muster,"[75] and a "particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose."[76] "Whether a pretrial detainee has been punished generally turns on whether the conditions have a purpose other than punishment, and whether the totality of the conditions are 'excessive' such that they resulted in 'genuine privations of hardship over an extended period of time.'"[77]

Sexual assault constitutes impermissible punishment, as it cannot and does not serve a legitimate governmental objective.[78] In *E.D. v. Sharkey*, our Court of Appeals recognized a pretrial detainee's "right to 'not be sexually assaulted by a state employee while in confinement'" as clearly established under the Fourteenth Amendment.[79]

Mr. Hailey alleges Officer Beard conducted the August 30, 2017 pat down by running "his fingers up [Mr. Hailey's] legs and thighs until eventually massaging [Mr. Hailey's] groin and penis."[80] When Mr. Hailey felt "uncomfortable" and asked Officer Beard to stop the search, Officer Beard responded: "Shut up bitch! This is my house, you do what I say, when I say it. Your [sic] my bitch now!"[81] Over the following several months, Officer Beard "would randomly strip [Mr. Hailey] without justification, blow kisses, stick his tongue through his index and middle finger in a sexual manner and make vulgar comments on a routine basis."[82] Following a visit with

9

his parents, Officer Beard ordered Mr. Hailey to get "fully naked" for a strip search, then repeatedly ordered Mr. Hailey to "squat and cough."[83] Mr. Hailey complied several times, but when Mr. Hailey eventually refused, Officer Beard threatened segregated housing and indefinite loss of visitation privileges.[84] In fear of these threats, Mr. Hailey "again complied and [Officer] Beard physically grabbed [Mr. Hailey's] buttocks and spread them apart. [Officer] Beard then got on his knees and asked [Mr. Hailey] to let him, '[t]aste him."[85] Similar to *E.D. v. Sharkey*, Mr. Hailey sets "forth a plausible violation of [his] right to personal bodily integrity protected by the Due Process Clause of the Fourteenth Amendment."[86]

Officer Beard's sexual harassment and abuse of Mr. Hailey allegedly included many months of unwanted, intrusive touching, unnecessarily forcing Mr. Hailey to get fully naked for strip searches, verbal threats, sexual remarks and lewd gestures. As plead, Officer Beard's abuse does not and cannot serve a legitimate governmental objective. Mr. Hailey has the right to not be sexually assaulted by a correctional officer while detained awaiting his trial. He sufficiently pleads Officer Beard violated this right.

**b.    Mr. Hailey fails to plead *Monell* civil rights claims.**

Warden Algarin, Captain Berger, Captain Moyer, Major Carbo, Major Brown, Captain Smith, Lieutenant Zerr, Officer Beard and Officer Errington move to dismiss Mr. Hailey's section 1983 official capacity claims against them for municipal liability arguing Mr. Hailey failed to plead a Facility policy or custom as the "moving force" behind the violation of his constitutional rights under *Monell*. We agree.

In *Monell*, the Supreme Court held a municipal entity may be liable under 42 U.S.C. § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy" deprives a citizen of

10

constitutional rights.[87] "[A] municipality cannot be subjected to liability solely because injuries were inflicted by its agents or employees."[88] "Liability exists when 'there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'"[89] "A municipality is not liable under [s]ection 1983 unless the policy or custom was the 'moving force' underlying the constitutional violation."[90] The Supreme Court in *Monell* required a plaintiff plead the existence of "1) a policy or lack thereof; 2) a policy maker that effectuated said policy; and 3) a constitutional violation whose 'moving force' was the policy in question."[91] "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."[92]

We are guided by Judge Pratter's analysis in *Wright v. City of Philadelphia*, denying a motion to dismiss a *Monell* claim.[93] Mr. Wright alleged "no fewer than eight specific customs, practices, or policies maintained or indulged by the City at the time of his arrest and prosecution that led to his constitutional injury," including:

> "(i) using coercive techniques to obtain confessions, such as threats of violence, false promises, and the use of prolonged interrogations; (ii) fabricating incriminating statements from witnesses, by, for example, separating juveniles from their parents and providing witnesses with details of the crime only the perpetrator or police could know; (iii) fabricating inculpatory evidence; (iv) withholding exculpatory evidence; (v) failing to adequately discipline officers who engaged in unconstitutional conduct; (vi) failing to adequately train and supervise officers; (vii) ignoring systematic police misconduct and abuse of civilians' rights; and (viii) failing to discipline officers who failed to report the unconstitutional conduct of fellow officers."[94]

Mr. Wright also plead a policy maker effectuated these policies and several instances when some police officers engaged in the alleged misconduct.[95] By way of contrast, we look to Judge Pratter's analysis in *Thomas v. City of Philadelphia* dismissing Mr. Thomas' *Monell* claim for Fourteenth

11

Amendment malicious prosecution and *Brady* violations because he plead only one instance of these violations other than his own.[96]

Mr. Hailey does not plead a Facility policy, custom or practice of sexual abuse on its inmates or of Facility officers to allow sexual abuse to occur and continue despite complaints and reports. Mr. Hailey alleges he wrote "multiple request slips to Defendant's [sic] Moyer, Zerr, Smith, Brown Carbo to which never received a response."[97] Mr. Hailey alleges he reported Officer Beard's abuse to Major Brown, but the Major "dismissed [Mr. Hailey's] allegations without investigating or reporting said incident" in violation of federal statute.[98] Mr. Hailey alleges "[Warden] Algarin, [Captain] Berger, [Captain] Moyer, [Major] Carbo, [Major] Brown, [Captain] Smith, [and Lieutentant] Zerr have supervisory power and have the legal duty to report allegations of abuse and/or harassment,"[99] but failed to do so.

These alleged instances of officers failing to investigate request slips or ignoring his complaints could be connected, but Mr. Hailey does not allege the officers acted or failed to act under direction of a Facility policy. Their failure to satisfy a legal obligation alone is not a policy or custom of the Facility. Mr. Hailey fails to allege the existence of a policy effectuated by a policy maker. Mr. Hailey instead alleges Warden Algarin did not respond his August 30, 2017 letter by insuring the abuse would end, a "fail[ure of] his duties" under the Prison Rape Elimination Act.[100] The Act sets a zero-tolerance policy for rape and sexual assault in prisons and holds prisons more accountable for inmate safety by making means of reporting prison rape and sexual assault more accessible and requiring prison officials investigate each report.[101] There is no basis to infer the Facility violates the Act as a matter of policy. Finally, Mr. Hailey fails to allege a Facility policy, effectuated by a policy maker, to be the "moving force" behind his sexual abuse.

12

Mr. Hailey's allegations fall drastically short of the allegations found sufficient in *Wright* where Mr. Wright plead eight distinct policies or customs of the City of Philadelphia motivating his constitutional injury. Mr. Hailey plead numerous instances of violative conduct, rather than specific policies or customs of his jail, which caused his constitutional restrictions.

Mr. Hailey's claims are based on a *respondeat superior* theory, which precludes supervisory liability under *Monell*. Warden Algarin's alleged awareness of Officer Beard's abuse and unconstitutional conduct is contained in Mr. Hailey's "failure to protect" claim, but Mr. Hailey did not allege Warden Algarin ignored his reports and complaints under a policy of custom of the Facility. Mr. Hailey fails to plead official capacity liability against Facility officials for the second time. We dismiss these claims without prejudice should Mr. Hailey discover a policy.

> **c.      Mr. Hailey pleads a failure to protect claim against Warden Algarin, Major Brown, Captain Moyer, Captain Smith and Lieutenant Zerr, but not against Major Carbo, Captain Berger or Officer Errington.**

Major Carbo, Major Brown, Captain Smith, Lieutenant Zerr, Correctional Officer Errington and Warden Algarin move to dismiss Mr. Hailey's section 1983 claim against them for their alleged failure to protect Mr. Hailey from Officer Beard's sexual harassment and abuse, arguing Mr. Hailey's claims are "purely conclusory" and "lack any factual foundation." We agree as to Captain Berger, Major Carbo and Officer Errington, but disagree as to Warden Algarin, Major Brown, Captain Moyer, Captain Smith and Lieutenant Zerr.

Our Court of Appeals is yet to articulate a standard governing sexual harassment and abuse in the pretrial detainee context, but it "ha[s] stated in dicta . . . the state of mind requirement for prisoner' failure to protect claims – 'deliberate indifference' – applies also to pretrial detainees' claims."[102] "[A] pretrial detainee presenting a failure-to-protect claim must plead that the prison official acted with deliberate indifference to the detainee's health or safety."[103] The standard for

13

"deliberate indifference" is subjective, requiring "the prison official-defendant[s] must actually have known or been aware of the excessive risk to inmate safety."[104] A plaintiff must demonstrate "the defendant was subjectively aware of the risk of harm to the plaintiff's health or safety, and disregarded it."[105]

"It is well established [] merely negligent misconduct will not give rise to a claim under [section] 1983; the [Commonwealth] defendant must act with a higher degree of intent."[106] In *E.D. v. Sharkey*, Judge Smith stated a plaintiff's mere allegation "a defendant knew of a risk to the plaintiff is insufficient to support an inference of deliberate indifference absent any factual allegations supporting that conclusion, and thus cannot alone establish facial plausibility."[107] Judge Smith dismissed the failure to protect claims against a prison official because the plaintiff alleged only "conclusory statements" about the prison official's knowledge of abuse which "are not entitled to a presumption of truth."[108] In comparison, our Court of Appeals held in *Bistrian v. Levi* the inmate plaintiff plead a plausible failure to protect claim by alleging he advised several prison officials of a specific violent threat made by a specific inmate and the officers still placed the plaintiff "in the recreation yard with . . . [inmates] who knew of [the plaintiff's] prior complicity with prison authorities."[109] A sufficiently plead deliberate indifference claim alleges "how and when" a defendant is advised of unconstitutional conduct.[110]

### 1. Mr. Hailey pleads Warden Algarin's, Major Brown's, Captain Moyer's, Captain Smith's and Lieutenant Zerr's deliberate indifference to his health and safety.

Mr. Hailey alleges he used numerous methods to notify Facility officials of Officer Beard's abuse. Mr. Hailey allegedly wrote Warden Algarin the August 30, 2017 letter immediately after Officer Beard sexually assaulted him.[111] This letter (attached as Exhibit A to the Second Amended Complaint) informs Warden Algarin of the extreme, ugly and persistent nature of Officer Beard's

alleged abuse.[112] Mr. Hailey also alleges he repeatedly wrote Warden Algarin through "request forms" about Officer Beard's abuse, but never received a verbal or written response.[113]

Mr. Hailey alleges he went to Major Brown's office immediately after an incident of Officer Beard's abuse.[114] Mr. Hailey allegedly "spoke to Major Brown, and asked to be seen by medical. [Mr. Hailey] explained what happened and [Major] Brown dismissed [Mr. Hailey's] allegations without investigating or reporting [them] . . . . [Mr. Hailey] was denied medical by [Major] Brown."[115]

Mr. Hailey alleges he spoke directly with Captain Moyer, Captain Smith and Lieutenant Zerr after the August 30, 2017 assault.[116] "After this incident . . . [Mr. Hailey] spoke face to face . . . and immediately notified [Captain] Moyer, [Lieutenant] Zerr, and [Captain] Smith as they conducted their routine rounds."[117] These prison officers took Mr. Hailey to the "J & K block supervisor's office"[118] where each prison officer responded to Mr. Hailey with a dismissive remark or threat. Captain Moyer responded: "Grow a pair and man up!"[119] Lieutenant Zerr asked: "Is this how you want to start off your time? We can do this the easy way or the hard way."[120] Captain Smith brandished his can of pepper spray and while shaking the can threatened Mr. Hailey: "Let me hear something else about you snitching on my officer, I got something for you!"[121]

Mr. Hailey's allegations against Captain Moyer, Major Brown, Warden Algarin, Captain Smith and Lieutenant Zerr are not general in nature. Mr. Hailey pleads the subjective knowledge of abuse of each named prison official through allegations of direct face to face or written communication. Mr. Hailey alleges Warden Algarin's personal knowledge of his sexual abuse through numerous written communications. Mr. Hailey alleges he alerted Major Brown of his abuse immediately after an episode with Officer Beard. Mr. Hailey alleges he spoke face to face

15

in the "J & K block supervisor's office" with Captain Moyer, Captain Smith, Lieutenant Zerr, after the August 30, 2017 assault and describes each interaction.

Mr. Hailey cures this defect from his Amended Complaint because he now alleges "how and when" he advised these Facility officials of his abuse. Mr. Hailey alleged in his Amended Complaint he spoke to Majors Carbo and Brown, Captain Smith, and Lieutenant Zerr about the "unbearable encounters with [Officer] Beard . . . to which he was met with threats to stop reporting it or be put in segregation [sic]."[122] Mr. Hailey alleged he requested grievances, but these prison officials denied his request and "swept [Officer Beard's sexual harassment and abuse] under the rug."[123] Mr. Hailey also alleged Majors Carbo and Brown told him he did not "know when to keep [his] mouth shut" after Mr. Hailey asked why prison officials on multiple occasions chose to search his cell and destroyed his property.[124] We dismissed Mr. Hailey's failure to protect claim raised in the Amended Complaint because Mr. Hailey failed to plead sufficient notice to all prison officers except Warden Algarin. But by now including more facts about "how and when", and sometimes where, he notified these prison officials after the August 30, 2017 episode, Mr. Hailey pleads failure to protect claims sufficient to withstand a motion to dismiss.

Mr. Hailey pleads Captain Moyer, Major Brown, Warden Algarin, Captain Smith, and Lieutenant Zerr acted with deliberate indifference to his health and safety because, despite his written and face to face interactions demonstrating their subjective knowledge of the abuse, they allegedly took no action to investigate or stop it.

Mr. Hailey submitted written communications to the Warden – his August 30, 2017 letter and numerous request form – which detailed the abuse and begged for help, but the Warden did not respond. Mr. Hailey also spoke Captain Moyer, Captain Smith, Lieutenant Zerr and Major Brown after Officer Beard's abuse, but none took action to protect Mr. Hailey, some choosing to

16

antagonize him instead and the abuse continued. These allegations establish facial plausibility of deliberate indifference to Mr. Hailey's health and safety because Mr. Hailey pleads prison officials' subjective knowledge of his abuse and their failure to properly respond. These facts are unlike the conclusory allegations in *Sharkey*. Mr. Hailey pleads Captain Moyer, Major Brown, Warden Algarin, Captain Smith and Lieutenant Zerr had personal, subjective knowledge of the specific risks he faced. Mr. Hailey satisfies the deliberate indifference standard for failure to protect under section 1983.

## 2. Mr. Hailey fails to plead Major Carbo's, Captain Berger's, and Officer Errington's deliberate indifference to his health and safety.

Mr. Hailey allegedly reported the abuse to Major Carbo over an approximately seven-month period, but "was met with threats to stop reporting it or be put in segregation."[125] Mr. Hailey alleges he called the Prison Rape Elimination Act hotline "more than [ten] times to which . . . incident report[s] were sent" to Major Carbo and Captain Berger, but they "never investigated or reported the incidents."[126] Mr. Haley also allegedly asked Major Carbo and other Facility officers for grievance forms "more than [twenty-five] separate times in a [nine] month span to which his request was and [sic] 'swept under the rug' without an investigation or a single report done."[127] Mr. Hailey alleges he eventually obtained and submitted an initial grievance form to Officer Errington.[128] But after submission, Officer Errington allegedly "misplaced or lost" the form and the grievance ultimately "disappeared."[129] Mr. Hailey alleges Officer Errington "failed his duties . . . to report the incident as required" by the Prison Rape Elimination Act.[130]

These allegations of generalized or objective knowledge and notice about Officer Beard's abuse fail to rise to the level required to conclude the officers acted with deliberate indifference towards Mr. Hailey's health and safety. Mr. Hailey did not allege Major Carbo, Captain Berger and Officer Errington had personal knowledge of his abuse and failed to protect him from a known

17

risk. These allegations mostly amount to Mr. Hailey claiming he told these officers about the abuse and they failed to act. We cannot conclude the officers "turned a 'blind-eye'" just because the sexual abuse and harassment continued and worsened with passing time. These allegations are conclusory and are not entitled to a presumption of truth.

Similar to *Sharkey*, Mr. Hailey's allegations he generally told the officers about the abuse, or officers should have known about the abuse if they responded to his verbal or hotline complaints, are not sufficient to establish facial plausibility because they are not supported by facts as to "how and when" Mr. Hailey advised Major Carbo, Captain Berger and Officer Errington of his abuse. These allegations contrast with those against Captain Moyer, Major Brown, Warden Algarin, Captain Smith and Lieutenant Zerr which specifically detail interactions with Mr. Hailey. We dismiss Mr. Hailey's failure to protect claims against Major Carbo, Captain Berger and Officer Errington without prejudice.

### 3. Mr. Hailey fails to plead a claim against Captain Berger for laughing during his conversation with Investigator John Doe.

Captain Berger argues laughing at an inmate is not actionable conduct and moves to dismiss the section 1983 claim against him.

"Allegations of verbal abuse or threats, unaccompanied by injury or damage, are not cognizable under [section] 1983, regardless of whether the inmate is a pretrial detainee or sentenced prisoner."[131] "Verbal abuse of a prisoner, even of the lewd variety . . . , is not actionable under [section] 1983."[132] Mr. Hailey alleges Investigator Doe interviewed him at the Facility in response to his April 25, 2018 letter to the Montgomery County District Attorney's office requesting help from Officer Beard.[133] During this interview and in response to Mr. Hailey's detailing of abuse and request for help, Investigator Doe threatened Mr. Hailey "to stop making reports or their [sic] would be no deal on [his] criminal case that was pending."[134] Captain Berger

18

allegedly witnessed this interview and "just laughed" when Investigator Doe threatened Mr. Hailey.[135]

Mr. Hailey alleges no verbal abuse by Captain Berger. Mr. Hailey alleges only Captain Berger laughed during his interview with Investigator Doe. Mr. Hailey alleges no harm from Captain Berger's laughter, nor further conduct we could consider verbally abusive. Captain Berger's laughter, even if considered verbal abuse directed at Mr. Hailey, must be dismissed.

## B. Mr. Hailey pleads conspiracy and intentional infliction of emotional distress against Warden Algarin, Captain Berger, Captain Moyer, Major Carbo, Major Brown, Captain Smith and Lieutenant Zerr.

Mr. Hailey alleges Warden Algarin, Captain Berger, Investigator Doe, Captain Moyer, Major Carbo, Major Brown, Captain Smith and Lieutenant Zerr "colluded to cover up" Officer Beard's abuse.[136] He also alleges Officer Beard is liable for intentional infliction of emotional distress. The Defendants move to dismiss all claims in the Second Amended Complaint, but present no argument challenging Mr. Hailey's conspiracy on emotional distress claims.

The Supreme Court in *Bell Atlantic Corp. v. Twombly* concluded "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[137] To survive a motion to dismiss, a plaintiff must plead factual allegations "rais[ing] a right to relief above the speculative level."[138] "Bare conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy. The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such agreement can be inferred."[139]

19

### 1. Mr. Hailey pleads a conspiracy to cover up Officer Beard's sexual assault and failure to protect.

Mr. Hailey makes "bare conclusory allegations" of conspiracy when he alleges Facility officers "colluded" to cover up Officer Beard's abuse. Mr. Hailey alleges the Facility officers "colluded" by "failing to transport [Mr. Hailey] or [temporarily] suspending or terminat[ing] [Officer] Beard," and "by not reporting or investigating" his reports.[140] Mr. Hailey also alleges Warden Algarin, Captain Berger, Captain Moyer, Major Carbo, Major Brown, Captain Smith and Lieutenant Zerr "colluded with [Investigator Doe] . . . and allowed [Officer] Beard to act contrary to [Facility] policy, code of ethics and legal standards . . . ."[141] These allegations alone are insufficient to defeat a Rule 12(b)(6) motion to dismiss.

But Mr. Hailey also alleges a concerning pattern in the way Facility officials responded to his complaints of sexual abuse. Mr. Hailey alleges he never received a response to any of his written complaints, whether they be request slips or grievance forms.[142] Mr. Hailey alleges he complained to the Prison Rape Elimination Act hotline more than ten times and Facility officers never investigated the incident reports sent from the hotline to the Facility.[143] Mr. Hailey alleges the grievance form he submitted to Officer Errington "somehow . . . disappeared between [his] hands and Officer Errington."[144] When Mr. Hailey complained of abuse to Captain Smith, the Captain brandished his can of pepper spray and shook it while he threatened Mr. Hailey: "Let me hear something else about you snitching on my officer, I got something for you!"[145] In his August 30, 2017 letter to Warden Algarin, Mr. Hailey begged: "It aint [sic] in my nature to talk to cops anyway cuz [sic] yall [sic] only ride and back each other but you need to do something."[146] In his April 25, 2018 letter to Montgomery County District Attorney Kevin Steele, Mr. Hailey informed of his sexual abuse by Officer Beard and described: "It's been going on since 2017. When I first entered [the Facility] I reported these incidents multiple times to [the Prison Rape Elimination Act

20

hotline] to which each report was swept under the rug."[147]  In his April 13, 2019 letter to District

Attorney Steele, Mr. Hailey again explained his sexual abuse and informed he "was scared to speak

up [about the abuse because of] the retaliation [he] would face."[148]

Considering these allegations in sum, we conclude Mr. Hailey pleads facts supporting an

inference Warden Algarin, Captain Berger, Investigator Doe, Captain Moyer, Major Carbo, Major

Brown, Captain Smith and Lieutenant Zerr acted in concert to "cover up" Officer Beard's abuse.

Mr. Hailey's allegations exceed the "speculative level," as we find it plausible Facility officers

acted together, following Warden Algarin's lead, in ignoring Mr. Hailey's complaints and Officer

Beard's ongoing sexual misconduct.

## 2.    Mr. Hailey pleads intentional infliction of emotional distress against Officer Beard.

Mr. Hailey claims intentional infliction of emotional distress against Officer Beard. Mr.

Hailey alleges Officer Beard's abuse caused him to "suffer great emotional distress" which

"continues to haunt [him] to this day,"[149] and the abuse "was outrageous and beyond all possible

bounds of decency and utterly intolerable in a civilized society."[150]  Officer Beard moves to dismiss

all claims in the Second Amended Complaint, but presents no argument challenging this claim.

To state a claim for intentional infliction of emotional distress, Mr. Hailey must plead: "(1)

extreme and outrageous conduct (2) that intentionally or recklessly (3) causes emotional distress

(4) which must be severe."[151]  Conduct is considered outrageous where it is "so outrageous in

character, and so extreme in degree as to go beyond all possible bounds of decency, and to be

regarded as atrocious, and utterly intolerable in a civilized society."[152]  "Generally, the case is one

in which the recitation of the facts to an average member of the community would arouse his

resentment against the actor, and lead him to exclaim, 'Outrageous.'"[153]

21

Mr. Hailey alleges Officer Beard's abuse commenced immediately upon admission to the Facility when, during a pat down beginning at Mr. Hailey's ankles, Officer Beard "ran his fingers up [Mr. Hailey's] legs and thighs until eventually massaging [Mr. Hailey's] groin and penis."[154] Mr. Hailey asked Officer Beard to stop, and the Officer responded: "Shut up bitch! This is my house, you do what I say, when I say it. Your [sic] my bitch now!"[155] Over the following months, Officer Beard "would randomly strip [Mr. Hailey] without justification, blow kisses, stick his tongue through his index and middle finger in a sexual manner and make vulgar comments on a routine basis."[156] In a later strip search, Officer Beard ordered Mr. Hailey to strip completely naked and then "[o]ver and over, [Officer] Beard ordered [Mr. Hailey] to squat and cough."[157] When Mr. Hailey eventually disobeyed, Officer Beard threatened to take away Mr. Hailey's visitation privileges and place him in segregated housing.[158] After this threat, Mr. Hailey again squatted and coughed, "[a]t which time [Officer Beard] physically grabbed [Mr. Hailey's] buttocks and spread them apart. [Officer] Beard then got on his knees and asked [Mr. Hailey] to let him, '[t]aste him.'"[159] In March 2018, Officer Beard "tried to hug and kiss [Mr. Hailey] while groping [Mr. Hailey's] groin."[160] As a result of this conduct, Mr. Hailey now suffers "great emotional distress" which "haunts" him every day.[161] Mr. Hailey currently in therapy to treat his emotional distress.[162]

Mr. Hailey's allegations of intentional infliction of emotional distress are more than conclusory. Mr. Hailey pleads outrageous conduct in describing Officer Beard's abuse. Mr. Hailey pleads Officer Beard's intent to inflict emotional distress by his repeated abusive episodes and threats to force Mr. Hailey's compliance. Mr. Hailey pleads severe emotional distress by alleging he is haunted every day by Officer Beard's abuse and his current treatment.

22

Mr. Hailey cures the defects from his Amended Complaint when he insufficiently alleged facts supporting his emotional distress claim. Mr. Hailey present allegations sufficiently push his claim from speculative to plausible. Accepting these allegations as true, we find Officer Beard's alleged conduct beyond all possible bounds of decency, atrocious and utterly intolerable in a civilized society.

We deny Defendants' motion to dismiss Mr. Hailey's conspiracy claim against the officers with whom he interacted and his intentional infliction of emotional distress claim against Officer Beard.

## III. Conclusion

We have the right to not be sexually assaulted by correctional officers while detained awaiting trial. Mr. Hailey pleads sexual abuse by Officer Beard. Mr. Hailey also pleads failure to protect claims against Captain Moyer, Major Brown, Warden Algarin, Captain Smith, Lieutenant Zerr. Mr. Hailey pleads a conspiracy claim against Warden Algarin, Captain Berger, Investigator Doe, Captain Moyer, Major Carbo, Major Brown, Captain Smith and Lieutenant Zerr. Mr. Hailey pleads a claim for intentional infliction of emotional distress against Officer Beard. We deny dismissal of these claims.

We dismiss Mr. Hailey's *Monell* claims against prison officials in their official capacities as it is based solely on a *respondeat superior* theory. We dismiss Mr. Hailey's failure to protect claims against Major Carbo, Captain Berger and Officer Errington because the allegations are too generalized. We dismiss Mr. Hailey's civil rights claim against Captain Berger as laughing constitutes verbal abuse.

---

[1] Press Release, U.S. Dep't of Justice, *Allegations of Sexual Victimization in Adult Correctional Facilities Nearly Tripled from 2011 to 2015*, (July 25, 2018) (Office of Justice Programs).

[2] *Id.*

[3] U.S. Dep't of Justice, NJC 238640, BUREAU OF JUSTICE STATISTICS: PREA DATA COLLECTION ACTIVITIES (2012).

[4] "[A] Complaint, including a *pro se* Complaint, must conform with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure," "requir[ing] [] the Complaint be simple, concise, direct and set forth 'a short and plain statement of the claim showing [] the pleader is entitled to relief.'" *Atun El v. United States*, No. 13-3970, 2014 WL 1281230, at *1 (E.D. Pa. Mar. 31, 2014) (quoting Fed. R. Civ. P. 8(a)(2)). But the Supreme Court holds the allegations in a *pro se* pleading must be held to a "less stringent standard[] than formal pleadings drafted by lawyers . . . ." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). "[B]ecause [plaintiff] has filed his complaint *pro se*, we must liberally construe his pleadings, and we will apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citing *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002)).

[5] ECF Doc. No. 30 at ¶ 18.

[6] *Id.* at ¶ 21.

[7] *Id.* at ¶¶ 19, 21.

[8] *Id.* at ¶ 20.

[9] *Id.*

[10] *Id.* at ¶ 21.

[11] *Id.*

[12] *Id.* at ¶¶ 22, 43.

[13] *Id.* at ¶ 22, Ex. A.

[14] *Id.*

[15] *Id.* at ¶ 34.

[16] *Id.* at ¶ 22.

[17] *Id.*

[18] *Id.*

[19] *Id.* at ¶ 23.

[20] *Id.*

[21] *Id.* at ¶ 24.

[22] *Id.*

[23] *Id.* at ¶ 25.

[24] *Id.* at ¶ 26.

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.* at ¶ 27.

[32] *Id.* at ¶ 28.

[33] *Id.*

[34] *Id.* at ¶ 30.

[35] *Id.*

[36] *Id.* at ¶ 31.

[37] *Id.*

[38] *Id.* at ¶ 40.

[39] *Id.*

[40] *Id.* at ¶ 49.

[41] *Id.* at ¶ 32.

[42] *Id.*

[43] *Id.*

[44] *Id.* at ¶ 35.

[45] *Id.*

[46] *Id.* at ¶ 35, Ex. B.

[47] *Id.*

[48] *Id.* at ¶ 36.

[49] *Id.*

[50] *Id.* at ¶ 8.

[51] *Id.* at ¶ 37.

[52] *Id.* at ¶ 51, Ex. C.

[53] *Id.*

[54] *Id.*

[55] *Id.*

[56] *Id.* at ¶ 52.

[57] *Id.* at ¶ 51, Ex. D.

[58] *Id.* at ¶ 62.

[59] *Id.* at ¶ 58.

[60] *Id.*

[61] *Id.* at ¶¶ 5-15.

[62] ECF Doc. No. 11 at ¶ 44.

[63] *Id.* at ¶ 45.

[64] *Id.* at ¶ 46.

[65] *Id.* at ¶ 47.

[66] ECF Doc. No. 18.

[67] 436 U.S. 658 (1978).

[68] ECF Doc. No. 29.

[69] ECF Doc. No. 31. When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiffs complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must tak[e] note of the elements [the] plaintiff must plead to state a claim;" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corporation*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[70] *West v. Atkins*, 487 U.S. 42, 48 (1988).

[71] *Hall-Wadley v. Maintenance Department*, 386 F. Supp. 3d 512, 516-17 (E.D. Pa. 2019) (citing *Groman v. Township of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995)).

[72] *Hall-Wadley*, 386 F. Supp. 3d at 516-17 (citing *City of Rancho Palos Verdes, California v. Abrams*, 544 U.S. 113, 119-20 (2005)).

[73] ECF Doc. No. 31, at pp. 5-6.

[74] *Bell v. Wolfish*, 441 U.S. 520, 535–36 (1979); *Paulino v. Burlington County Jail*, 438 F. App'x 106, 109 (3d Cir. 2011) ("Under the Due Process Clause, 'the proper inquiry is whether [the challenged] conditions amount to punishment of the detainee.'") (quoting *Bell*, 441 U.S. at 535).

[75] *Bistrian v. Levi*, 696 F.3d 352, 372-73 (3d Cir. 2012) (citing *Bell*, 441 U.S. at 540).

[76] *Bell*, 441 U.S. at 538-39.

[77] *Id.*; *Hubbard v. Taylor*, 399 F.3d 150, 159-60 (3d Cir. 2005).

[78] *E.D. v. Sharkey*, 928 F.3d 299, 307 (3d Cir. 2019).

[79] *Sharkey*, 928 F.3d at 307 (citing *Beers-Capitol v. Whetzel*, 256 F.3d 120, 143 n.15 (3d Cir. 2001)).

[80] ECF Doc. No. 30 at ¶ 20.

[81] *Id.* at ¶ 21.

[82] *Id.* at ¶ 25.

[83] *Id.* at ¶ 26.

[84] *Id.*

[85] *Id.* at ¶ 27.

[86] *Sharkey*, 928 F.3d at 307 (citing *Stevenson v. Carroll*, 495 F.3d 62, 67 (3d Cir. 2007) (citing *Bell*, 441 U.S. at 535)).

[87] *Salvato v. City of Philadelphia*, No. 19-2079, 2020 WL 247880, at *3 (E.D. Pa. Jan. 15, 2020) (citing *Monell*, 436 U.S. at 694).

[88] *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007).

[89] *Salvato*, 2020 WL 247880, at *3 (citing *Brown v. Muhlenberg Township*, 269 F.3d 205, 214 (3d Cir. 2001)).

[90] *Stevens v. Borough*, No. 11-7216, 2013 WL 2292047, at *3 (E.D. Pa. May 23, 2013) (quoting *Kelly v. Borough of Carlisle*, 622 F.3d 248, 263, (3d Cir. 2010)).

[91] *Stevens*, 2013 WL 2292047, at *3 (quoting *Monell*, 436 U.S. at 690–91).

[92] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (internal citations omitted).

[93] *Wright v. City of Philadelphia*, 229 F. Supp. 3d 322, 337 (E.D. Pa. 2017).

[94] *Id.* at 336-37.

[95] *Id.* at 337.

[96] *Thomas v. City of Philadelphia*, 290 F. Supp. 3d 371, 387 (E.D. Pa. 2018).

[97] ECF Doc. No. 30 at ¶ 22.

[98] *Id.* at ¶ 28.

[99] *Id.* at ¶ 43.

[100] *Id.* at ¶ 60.

[101] 28 C.F.R. §§ 115.11, 115.71; *see Lee v. Kramer*, No. 17-190, 2017 WL 6729865, at *3 (W.D. Pa. Nov. 8, 2017) (Congress enacted the Prison Rape Elimination Act "for the purpose of remedying the inadequate response of corrections officials to prison rape.").

[102] *Edwards v. Northampton County*, 663 F. App'x 132, 135 (3d Cir. 2016) (finding no reason to apply a different standard in a case involving a pretrial detainee's conditions of confinement, as "[they] have applied the 'deliberate indifference' standard both in cases involving prisoners . . . and pretrial detainees"); *see Colburn v. Upper Darby Township*, 946 F.2d 1017, 1024 (3d Cir. 1991).

[103] *Burton v. Kindle*, 401 F. App'x 635, 638 (3d Cir. 2010) (per curiam).

[104] *Whetzel*, 256 F.3d at 125; *see also Bistrian*, 696 F.3d at 367 ("It is not sufficient [] the official should have known of the risk. A plaintiff can, however, prove an official's actual knowledge of a substantial risk to his safety [through circumstantial evidence].") (internal citations omitted).

[105] *E.D. v. Sharkey*, No. 16-2750, 2017 WL 2126322, at *4 (E.D. Pa. May 16, 2017); *see, e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (concluding "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety . . . .").

[106] *Burton*, 401 F. App'x at 637–38 ("In assessing where on the state-of-mind continuum misconduct must fall to establish a [section] 1983 claim, we have settled on 'deliberate indifference' [] in cases involving prisoners . . . .").

[107] *Sharkey*, 2017 WL 2126322, at *6–7.

[108] *Id.* at *7.

[109] *Bistrian*, 696 F.3d at 368-71.

[110] *See Knight v. Wapinsky*, No. 12-2023, 2013 WL 786339, at *7 (M.D. Pa. Mar. 1, 2013).

[111] ECF Doc. No. 30 at ¶ 22.

[112] *Id.* at ¶ 22, Ex. A.

[113] *Id.* at ¶ 34.

[114] *Id.* at ¶ 28.

[115] *Id.*

[116] *Id.* at ¶ 22.

29

[117] *Id.*

[118] *Id.*

[119] *Id.*

[120] *Id.* at ¶ 23.

[121] *Id.*

[122] ECF Doc. No. 11 at ¶ 27.

[123] *Id.*

[124] *Id.* at ¶ 29.

[125] ECF Doc. No. 30 at ¶ 30.

[126] *Id.* at ¶ 31.

[127] *Id.* at ¶ 30.

[128] *Id.* at ¶ 40.

[129] *Id.*

[130] *Id.*

[131] *Brown v. Hamilton Police Department*, No. 13-260, 2013 WL 3189040, at *2 (D.N.J. June 21, 2013); *see Willson v. Yerke*, No. 10-1376, 2013 WL 6835405, at *8 (M.D. Pa. Dec. 23, 2013), *aff'd*, 604 F. App'x 149 (3d Cir. 2015) ("[M]ere gestures or verbal harassment do not give rise to a substantive due process claim"); *see also Abuhouran v. Acker*, No. 04-2265, 2005 WL 1532496, at *4 ("It is well established . . . verbal harassment, or threats standing alone do not state a constitutional claim").

[132] *Aleem-X v. Westcott*, 347 F. App'x 731 (3d Cir. 2009).

[133] ECF Doc. No. 30 at ¶ 36-37.

[134] *Id.* at ¶ 36.

[135] *Id.* at ¶ 37.

[136] *Id.* at ¶ 56.

[137] *Twombley*, 550 U.S. at 555; *see Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting courts "are not bound to accept as true a legal conclusion couched as a factual allegation" on a motion to dismiss).

[138] *Twombley*, 550 U.S. at 555.

[139] *Thomas v. U.S. Airways*, No. 13-6121, 2014 WL 1910245, at *3 (E.D. Pa. May 13, 2014) (quoting *Flanagan v. Shively*, 783 F. Supp. 922, 928 (M.D. Pa. 1992)).

[140] ECF Doc. No. 30 at ¶ 56.

[141] *Id.* at ¶ 43.

[142] *Id.* at ¶¶ 22, 34, 40.

[143] *Id.* at ¶ 31.

[144] *Id.* at ¶ 40.

[145] *Id.* at ¶ 23.

[146] *Id.* at ¶ 22, Ex. A.

[147] *Id.* at ¶ 35, Ex. B.

[148] *Id.* at ¶ 51, Ex. C.

[149] *Id.* at ¶ 58.

[150] *Id.* at ¶ 59.

[151] *White v. Ottinger*, 442 F. Supp. 2d 236, 251 (E.D. Pa. 2006) (citing *Hoy v. Angelone*, 691 A.2d 476, 482 (Pa. Super. 1997)).

[152] *Hoy*, 720 A.2d at 754 (quoting *Buczek v. First National Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa. Super. 1987)).

[153] *Strickland v. University of Scranton*, 700 A.2d 979, 987 (Pa. Super. 1997).

[154] ECF Doc. No. 30 at ¶ 20.

[155] *Id.* at ¶ 21.

[156] *Id.* at ¶ 25.

[157] *Id.* at ¶ 26.

[158] *Id.*

[159] *Id.* at ¶ 27.

[160] *Id.* at ¶ 35.

[161] *Id.* at ¶ 58.

[162] *Id.*